UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
(electronically filed)

UNITED STATES OF AMERICA                                    PLAINTIFF

VS.                                       Criminal Action No. 3:21-cr-155-DJH

JOSHUA WHITE                                                DEFENDANT

## MOTION TO SUPPRESS SEARCH

Comes the Defendant, Joshua White (hereinafter "White"), by counsel, pursuant to the Fourth and Fifth Amendments to the United States Constitution, and respectfully moves this Court to suppress all evidence seized pursuant to an unlawful warrant authorizing a search and seizure at his residence located at 2134 Woodbourne Avenue, Louisville, Kentucky 40205 on February 27, 2021. As grounds for this motion, White states as follows:

The affidavit in support of the search failed to establish probable cause that evidence of a crime would be found at White's residence at the time of the search. The warrant failed to allege evidence of illegal activity, and the allegations contained in the affidavit were stale by the time the warrant was sought. The information contained in the affidavit that allegedly identifies White was obtained from a foreign government, thereby by-passing the warrant requirement in violation of White's Fourth Amendment rights, making the evidence obtained under this warrant the fruit of a poisonous tree. The warrant to search White's residence was so lacking in probable cause and nexus that official belief in its validity was not reasonable.

**Failure to allege a crime.**

The 29-page affidavit in support of the search warrant in this case states that, "There is probable cause to believe that a user of the Internet account at the SUBJECT PREMISES

accessed the TARGET WEBSITE." The substance of that access is described as "on April 11, 2019, IP address 104.49.245.246 'was used to access online child sexual abuse and exploitation material' via a website that the FLA named and described as the TARGET WEBSITE." As detailed in the affidavit, the "target website" does not contain child exploitation material, but instead contains links to other sites alleged to contain exploitative materials. The IP address having been used to access the target website does not equate to accessing exploitative materials. An alleged visit to the target website, without more, does not allege illegal activity.

Most of the 29 pages are used to explain how the Tor internet server works, and details about how the target website operates. These details do not include any specific allegations that White engaged in any of the conduct described. Paragraph 21 of the affidavit states that "for registered guests, the photo archive is available" making it clear that the photo archive is not available to each and every user who accesses the site, which is what the affidavit alleges White did. Paragraph 28 contains a conclusory allegation that goes further than the earlier reference to White's alleged conduct: the FBI was notified that a Foreign Law Enforcement Agency determined that on April 11, 2019, IP address 104.49.245.246 "was used to access online child sexual abuse and exploitation material" via a website that the FLA named and described as the TARGET WEBSITE. How it was determined that White had accessed materials "via" the target website was not discussed in the affidavit, just a bare assertion that he had done so.

Paragraph 16 of the affidavit states that the Target Website was an online chat site. The affidavit fails to show that a link to actual visual depictions of child pornography was accessed by White. Chatting is not criminalized by the statute cited in the affidavit. Without an assertion beyond that White accessed a chat site, there is no basis to believe there is probable cause that evidence of a crime will be found on White's computer.

Paragraph 33 of the affidavit states that, "FBI review of user data from that website found that less than two hundredths of one percent of user accounts registered an account on the website, accessed a message thread on the website, and then never returned to the website and logged in to the same account." However, no claim is made that White registered an account, nor that he accessed a message thread. The affiant does not provide any statistics about how often a person goes to the website after having been given the address (perhaps not even knowing what it is), and is disgusted and flees immediately never to return. But with the facts alleged in the affidavit, such a person could very easily be White. No claim is made as to how much time White spent on the Target Website, nor that he clicked on any of the content of the Target Website. The statistical claim by the affiant, without more facts, does not apply to, nor establish the intent of, this particular user. The affiant seems to acknowledge the lack of facts incriminating White in paragraph 35: "any user who accessed the TARGET WEBSITE has, at a minimum, knowingly accessed the TARGET WEBSITE with intent to view child pornography, or attempted to do so." The allegation is that White accessed the target website, period. There is no claim that White spent more than a second on the site, that he registered as a user, that he gained access to any files on the site, that he purchased anything on the site, that he downloaded anything from the site, that he followed a link on the site, or that he ever returned to the site – one moment of access, that is all that is alleged against White. This is not sufficient to show probable cause that evidence of a crime will be found on White's computer.

**Staleness.**

While it is true that stale information cannot be used in a probable cause determination, the Sixth Circuit has held that the same time limitations that apply to more fleeting crimes do not

control in cases of child pornography and it has laid out four factors to be considered when

determining staleness:

> (1) **the character of the crime** (chance encounter in the night or regenerating conspiracy?),
> (2) **the criminal** (nomadic or entrenched?),
> (3) **the thing to be seized** (perishable and easily transferrable or of enduring utility to its holder?), and
> (4) **the place to be searched** (mere criminal forum of convenience or secure operational base?).

*United States v. Frechette*, 583 F.3d 374, 377–78 (6th Cir. 2009) (holding that a warrant, based

on a child pornography website subscription purchased sixteen months earlier, was not stale

because evidence of the contraband was still likely to exist on his electronics) (emphasis added).

Applying the *Frechette* factors to the present case, it becomes apparent that the information in

the probable cause affidavit was stale.

The single access incident alleged in the affidavit occurred 22 months before the warrant

was sought. Thus, the first factor fits in the chance encounter category rather than the

regenerating conspiracy category. The affidavit does not allege any purchases, subscriptions,

downloads, lengthy or repeat visits, or any other conduct by White that would indicate an

ongoing crime. In *Frechette*, the defendant's subscription to a child pornography website was

used to conclude that the information was not stale. In the case at bar, the affiant conducted

follow-up investigation of White, none of which uncovered anything associated with continuing

or corroborating conduct on the part of White.

In a later 6th Circuit case, the court found that FBI evidence that the defendant had spent

over five hours on the child pornography website was sufficient to find probable cause to believe

evidence of the crime would be found on the computer if searched. "The search warrant was

based primarily on digital evidence from an FBI operation showing that Tagg had spent over five

hours browsing a website ("Playpen") that obviously contained child pornography." *United States v. Tagg*, 886 F.3d 579, 582 (6th Cir. 2018). Again, in this case, there is no such evidence or allegation. All that is affirmatively stated about White's conduct is that he accessed the site. That is not sufficient to provide probable cause to believe that 22 months later, there would be evidence of child pornography on his computer.

The other factors are less relevant and not determinative in this case. The background of White provided in the affidavit shows that he was entrenched in his life. He has owned his home for many years where he lives with his wife and has steady employment. This "entrenchment" should have made any investigation of White relatively easy to accomplish, yet nothing corroborating an interest in child pornography was uncovered during the 22 months between the alleged access and the warrant. Also, in this case, precisely what evidence was alleged to be on the computer is unclear. Evidence of the access without any alleged downloads would take very limited form, perhaps in the form of browser history, which would almost certainly be unavailable 22 months after the alleged access.

The first factor in this analysis is the significant one – no evidence or specific allegations of ongoing conduct was provided to the magistrate in the affidavit. Twenty-two months is too long to believe that evidence of a single event will still be found on a computer at White's residence when not bolstered by a subscription, a length of time spent, or any other allegations besides mere access. This evidence was stale and could not support a finding of probable cause to believe that evidence of criminal activity would be found in the place requested to be searched.

**Magistrate was not provided sufficient information to determine that foreign government had complied with Fourth Amendment when acquiring information regarding White's access.**

The FBI received information that White allegedly accessed a hidden website on the dark web utilizing the anonymizing service provider Tor. They received this information from an undisclosed foreign law enforcement agency (FLA), which the affidavit asserts used "FLA established legal undercover methodologies and techniques." The affiant has asserted to the magistrate that the techniques used were lawful. That is a bare bones conclusory statement that was not within the province of the investigative officer to assert. The investigative techniques used to penetrate the privacy of TOR (a Network Investigative Technique, or NIT) when carried out by the United States has been done with a warrant, and the legality of such a warrant has been heavily litigated. "This single NIT warrant executed in Virginia has implicated more than a hundred defendants across the United States. More than 40 district courts have held hearings regarding suppression of evidence generated from the NIT, including several courts in this circuit." *United States v. Horton*, 863 F.3d 1041, 1045–46 (8th Cir. 2017). Nevertheless, in this case, the affiant blithely asserted that the information was legally obtained by an FLA.

The NIT warrant affidavits utilized in the US have provided detailed information to the issuing magistrates. The same warrant was analyzed by the 6th Circuit in a 2019 case. "In support of the NIT warrant request, FBI Special Agent Douglas Macfarlane swore out a 32-page affidavit. Covering a number of topics related to the NIT deployment, the affidavit included (1) pertinent background information on the Tor software that formed the basis of Playpen's operation; (2) *specifics related to how agents would operate the NIT*; (3) an outline of the multi-step process required of users wishing to access Playpen; and (4) the substantive content a user

6

would encounter during each level of access into Playpen." *United States v. Bateman*, 945 F.3d

997, 1002 (6th Cir. 2019) (emphasis added). Here, the magistrate was not provided any

information about how the NIT operated, just an assurance that it met with the FLA's legal

requirements.

> The search warrant issued for the defendant's residence and
> computer in *Bateman* included much more information than was
> provided in the case at bar. "In her affidavit, Agent Kinzig
> provided detailed information about Bateman's activities on
> Playpen, which included his accessing of three specific discussion
> threads between February and March 2015. These threads included
> the following: (1) a thread entitled,
> "[new]MyBerryTryingtoGetItInEDIT [new]," which depicted an
> adult male engaged in sexual intercourse with a prepubescent
> female child; (2) a thread entitled "PTHC Anal dildo," which
> contained close-up images of a purple object inserted into a female
> child's anus; and (3) a thread entitled "A GIRL NAMED ALICIA
> 3yo or 4yo," which included an image in which the finger of an
> adult male was inserted into the vagina of a nude, prepubescent,
> toddler-aged female child. (R. 16-7, S.D. Ohio warrant at 311–13).
> In Agent Kinzig's opinion, the majority of images found within
> these threads contained child pornography as defined under 18
> U.S.C. § 2256. (*Id.*).

*United States v. Bateman*, 945 F.3d 997, 1004 (6th Cir. 2019). In White's case, there is no

information that he accessed any chat threads, just that he accessed the site. And despite his

alleged use of the TOR server to access the Target site, his information was obtained by a

government agent. If White was using TOR, as alleged, then he had taken pains to protect his

privacy. If a user who has taken special precautions to hide his IP address does not suffer a

Fourth Amendment violation when a law enforcement officer compels his computer to disclose

the IP address, then it is difficult to imagine *any* kind of online activity which is protected by the

Fourth Amendment. Law enforcement, should not coerce the computers of internet users into

revealing identifying information without a warrant, at least when the user has taken affirmative

steps to ensure that third parties do not have that information.

The government received information about a United States citizen's alleged computer activity that was attempted to be kept private. The government asserts that they have a lengthy relationship with this FLA and have gotten many leads from them in the past. Using this FLA as a way to get around a warrant requirement that would apply to the search f conducted by the United States is not acceptable. To allow such circumvention of the Fourth Amendment, particularly by working with foreign governments who will access the information of US citizens on US soil, is a dangerous slippery slope that this court should not condone.

**The good faith exception does not apply.**

When a Fourth Amendment violation has occurred, the evidence can be saved by application of the Good Faith exception found in *United States v. Leon*, 468 U.S. 897 (1984). However, the good-faith exception is inapposite in four situations: (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient. *Id.* at 923.

Here, the exception is inapplicable in that the affidavit was "bare bones" containing merely conclusory boilerplate language without probable cause related specifically to conduct tied to White or his residence, and the warrant so lacking in indicia of probable cause and

facially deficient that the executing officer's reliance on the warrant could not be in good faith or objectively reasonable. The Sixth Circuit has rightly scrutinized the district court's reliance on "objective reasonableness" in the good-faith context.  See *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (affidavit describing marijuana field near residence "falls short of establishing required nexus" between criminal activity and residence); *United States v. Laughton*, 409 F.3d 744, 751 (6th Cir. 2005) (no modicum of evidence connected defendant, criminal activity, and addressed to be searched); *United States v. Helton*, 314 F.3d 812, 821-23 (6th Cir. 2003) (outgoing calls from house to known drug dealer did not create substantial basis to believe evidence could be found in house); *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998) (affidavit did not establish any connection between target of the investigation and home to be searched); *United States v. Weaver*, 99 F.3d 1372, 1378-79 (6th Cir. 1998) (boilerplate language in affidavit failed to provide particularized facts regarding alleged crime occurring on premises to be searched); *United States v. Leake*, 998 F.2d 1359, 1365 (6th Cir. 1993) (minimal surveillance did not corroborate anonymous tip that narcotics could be found in basement of specific house).

This affidavit was so lacking in probable cause to believe that evidence of criminal activity would be found in the place to be searched 22 months after a single access incident was alleged. No officer could have reasonably relied on this warrant. The *Leon* good faith exception will not save this search.

WHEREFORE, White respectfully requests this Honorable Court enter the attached Order suppressing evidence obtained from the search of White's residence on February 27, 2021.

**Respectfully submitted**,

*/s/ Rob Eggert*

_____

**ROB EGGERT**
600 West Main Street
Suite 200
Louisville, Kentucky 40202
(502) 540-5700

**CERTIFICATE OF SERVICE**

It is hereby certified that a true copy hereof was filed this 21st day of January, 2022, via the cm/ecf system which will automatically send notice to all counsel of record.

*/s/ Rob Eggert*

_____

**ROB EGGERT**