UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA            PLAINTIFF

v.            CRIMINAL NO. 3:21-CR-155-DJH

JOSHUA WHITE            DEFENDANT

### RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS
*ELECTRONICALLY FILED*

The United States of America opposes the defendant's motion to suppress the search of his residence, which alleges a violation of his Fourth Amendment rights by a foreign law enforcement agency, lack of probable cause, and staleness. (DN 23). The motion should be denied because the warrant clearly established White illegally accessed a child pornography website and the Sixth Circuit recognized that information on child pornography rarely becomes stale. Additionally, the Fourth Amendment does not apply to foreign government searches.

### FACTUAL BACKGROUND

On February 8, 2021, Special Agent John Koski with Homeland Security Investigations (HSI) applied for and obtained a search warrant to search the defendant's residence in Louisville, Kentucky. (DN 23-1, Affidavit in Support of an Application for a Search Warrant). The affidavit alleged that there was probable cause to believe there was evidence that White committed the crime of accessing with the intent to view child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (DN 23-1. at para. 5). The affidavit contained the following supporting facts.

A foreign law enforcement agency (hereinafter "FLA") notified the FBI that on April 11, 2019, that an IP address associated with Joshua White "was used to access online child sexual

abuse and exploitation material" via a website located on the TOR network also known as the dark web. (DN 23-1, at paras. 28, 32). The FLA is a national law enforcement agency of a country outside the United States with an established rule of law and a history of providing reliable accurate information. (Id. at paras. 28, 30). The FLA's investigation took place outside of the United States and independently from any United States law enforcement personnel. (Id. at para. 30). The FLA and the FBI provided the above information to Special Agent Koski.

The subject website could only be accessed through TOR, which requires the user to download special software and know the 16 or 56-character web address of the subject website. (Id. at para. 32). The subject website was an active chat site that served the primary purpose of sharing child pornography. (Id. at para. 16). The first page of the website stated that it was intended for users to post photos and videos of "GIRLS 5 to 13 years [old]". (Id.). Child pornography images and videos were traded through this site via the posting of web links within the chat messages. (Id.). The website also listed several ways to avoid detection from law enforcement. (Id. at para. 22).

To enter the website, the user had to register. (Id. at para. 17). The registration page stated "Post links with good photos and videos (preview is required)", and listed certain types of videos that were prohibited, including those depicting hurtcore, death, and toddlers. (Id.). Registration required the user to create a nickname and password. (Id. at para. 18). Special Agent Koski reviewed several files of child pornography that were available on the website when White's IP address accessed the site and verified that they were indeed child pornography. (Id. at para. 29). The affidavit also set out certain characteristics of child pornography users, including that they typically use computer type devices to store and access child pornography over long periods of time. (Id. at paras. 43-44).

The search warrant was executed on White's residence on February 17, 2021,[1] where HSI agents seized several electronic storage devices. A forensic review of those devices revealed a combined 25 images of child pornography located on two devices. (Exhibit 1, HSI Report on forensic review, at pp. 6-7). On December 7, 2021, a federal grand jury indicted White for accessing with intent to view child pornography and possession of child pornography. (DN 1, Indictment). On January 28, White filed a motion to suppress all evidence seized from the search of his house. (DN 23).

## ARGUMENT

White's motion to suppress must fail because the warrant established probable cause that there was evidence at his residence that he accessed with the intent to view child pornography. The information in the warrant was not stale because courts recognize that child pornography cases involve the digital storage of these files for years. Lastly, there was no fourth amendment violation because the fourth amendment does not apply to foreign law enforcement agents operating on foreign soil.

### A. The warrant established probable cause.

To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate "a fair probability that evidence of a crime will be located on the premises of the proposed search." United States v. Jenkins, 396 F.3d 751, 760 (6th Cir. 2005) (quoting United States v. Bowling, 900 F.2d 926, 930 (6th Cir. 1990)). Generally, the failure to set forth within a search warrant the crime for which the search warrant is based is not fatal to establishing probable cause so long as the warrant presents probable cause that criminal acts occurred. See United States v. Summage, 481 F.3d 1075, 1078-1079 (8th Cir. 2007).

---

1 The search of the residence occurred approximately 22-months after White accessed the subject website.

The search warrant affidavit in this case specifically states in paragraph 5 that the alleged crime is access with intent to view child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). (DN 23-1, para. 5). The affidavit goes on to allege that White used the Onion Router to access a hidden child pornography website on the dark web and took numerous affirmative steps to access it. (Id. at paras. 9, 10, 14-19, 26, 28, 29, 32). Based on the information in the affidavit, the only people who access the subject website do so with the intent to view child pornography.

To access the subject website, a user must register on that website. On the registration page, the site reads "No hurtcore, No gore, No zoo, No death, No toddlers." (DN 23-1 at para. 17). These are all references to types of child pornography. Additionally, the front page of the site states "post links with good photos and videos" depicting "[o]nly GIRLS 5-13 years [old]." (DN 23-1 at para. 16). A fair reading of that information provides sufficient evidence that it is more likely than not that White accessed the website with the intent to view child pornography.

It is near impossible to reach this website by accident and the site specifically states that it is for sharing photos and videos of girls between 5-13 years old. Paragraph 28 of the affidavit specifically states that the user of the subject IP address used the subject website to access online child sexual abuse material. (DN 23-1 at para. 28). The affidavit provided sufficient facts to support the conclusion that probable cause existed to believe White's home contained evidence of the crime of accessing with intent to view child pornography.

**B. The warrant was not stale.**

Most circuits, including the Sixth Circuit, have found that information on child pornography rarely becomes stale because individuals seldom, if ever, dispose of child pornography. See, e.g., United States v. Hampton, 504 F. App'x 402, 2012 WL 5382946, at *2 (6th Cir. Nov. 5, 2012) ("Collectors of child pornography . . . rarely if ever dispose of such material,

and store it for long periods in a secure place, typically in their homes.") (internal quotation marks omitted); United States v. Eberle, 266 F. App'x, 200, 205 (3d Cir. 2008) (three-year-old information that defendant had uploaded child pornography from a different computer not stale); United States v. Richardson, 607 F.3d 357, 370 (4th Cir.), cert. denied, 562 U.S. 982, 131 S. Ct. 427, 178 L. Ed. 2d 324 (2010); United States v. Schesso, 730 F.3d 1040, 1047 (9th Cir. 2013) (two-year-old information not stale); United States v. Morales—Aldahondo, 524 F.3d 115, 119 (1st Cir. 2008) (three-year-old child pornography subscriptions not stale); United States v. Prideaux-Wentz, 543 F.3d 954, 958 (7th Cir. 2008) ("We have suggested that the staleness argument takes on a different meaning in the context of child pornography because of the fact that collectors and distributors rarely, if ever, dispose of their collections."); United States v. Lemon, 590 F.3d 612, 614-15 (8th Cir. 2010) (affirming search warrant in child pornography case when evidence to support warrant was 18 months old). When determining staleness, Courts are directed to assess four factors set out in United States v. Abboud, 428 F.3d 554, 572-73 (6th Cir. 2006). Those four factors are:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?),
> (2) the criminal (nomadic or entrenched?),
> (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and
> (4) the place to be searched (mere criminal forum of convenience or secure operational base?).
>
> Abboud, 428 F.3d at 572-73. Each of these factors supports the determination that the

warrant in this case was not stale.

The first factor, the character of the crime, favors a determination that the subject warrant was not stale. The Sixth Circuit has repeatedly held that child pornography is not a fleeting crime, but that it is usually carried out in the secrecy of the home over long periods of time. U.S. v. Frechette, 583 F.3d 374, 378 (6th Cir. 2009). As such, the same time limitations that have been

applied to other crimes do not control the staleness inquiry for child pornography offenses. Id. at 378. Additionally, "evidence that a person visited a website containing child pornography supports the conclusion that he has likely downloaded, kept, and otherwise possessed the material." United States v. Wagers, 452 F.3D 534, 540 (6th Cir. 2006). A relaxed approach to the temporal requirements in child pornography cases comports with other circuits as well as the Sixth. United States v. Elbe, 774 F.3E 885, 890 (6TH Cir. 2014). The Court in Frechette noted that the search warrant affiant swore that "in his experience evidence of child pornography downloading often remains on a computer for lengthy periods of time," recognizing that courts may give considerable weight to the conclusion of experienced law enforcement officers regarding where evidence of a crime is likely to be found. Frechette, 583 F.3d at 378.

In the present case, White accessed a hidden child pornography website on the dark web that required the user to register to enter the site. (DN 23-1 at para. 17). Because of the nature of how the dark web works, it is extremely unlikely that White found this website on accident. (Id. at paras. 14-15). Based on this activity, the Court can assume that the subject of the search warrant likely downloaded, kept, or otherwise possessed child pornography. Evidence of this crime was likely to be found on White's computer based on the nature of child pornography users as explained in the affidavit. (Id. at paras. 43-45). Based on Special Agent Koski's knowledge and experience, he knows that child pornography users typically possess and maintain child pornography materials electronically in their home and retain those materials for years. (Id. at para. 44). This factor favors the determination that the warrant was not stale.

The second factor, whether the criminal is nomadic or entrenched, favors a determination that the subject warrant was not stale. Whether the criminal is entrenched can be proven by evidence that the defendant lived in the same residence for the entire time between the facts giving

rise to the probable cause and the date of the search. Frechette, 583 F.3d at 379. White lived at the searched residence at the time he accessed the Target Website. White's IP address was used to access the Target Website on April 11, 2019. (DN 23-1, at para. 36). At that time, White was the subscriber to that IP address and lived at the Woodbourne address. (Id. at para. 37). White still lived at that residence on the date of the search in February 2021. (Id. at paras. 38-42). White was entrenched at the search location.

The third factor, the thing to be seized, favors a determination that the subject warrant was not stale. Child pornography is different from perishable goods like narcotics, which are bought, sold, and used. Frechette, 583 F.3D at 379. "Child pornography can be easily duplicated and kept indefinitely even if they are sold or traded." Id. Images can remain on a computer hard drive even after being deleted and can be recovered by forensic examiners. United States v. Terry, 522 F.3d 645, 650 n.2 (6th Cir. 2008). The warrant made clear to the Magistrate Judge in this case that child pornography images are typically stored electronically for several years and may be discovered even after being "deleted". (DN 23-1, at para. 44(c)-(e)).

The fourth factor, the place to be searched, favors a determination that the subject warrant was not stale. The home, for a child pornography defendant, is considered a secure operational base. Frechette, 583 F.3D at 379. See also United States v. Paull, 551 F.3D 516, 522 (6th Cir 2009) (holding that the crime of possession of child pornography is generally carried out in the secrecy of the home and over a long period). The subject warrant was for White's residence which is considered a secure operational base for a child pornography defendant. Every staleness factor supports the conclusion that the warrant in this case was not stale.

**C. The Fourth Amendment does not apply to foreign government agents.**

The 4th amendment does not apply to foreign government searches unless aided by U.S.

federal agents. Because the United States was not involved in the original search by the foreign law enforcement agency no fourth amendment rights are implicated in this case.

The fourth amendment protects United States citizens from unlawful searches and seizure of their person or property without probable cause. The fourth amendment, however, does not reach the actions of those not acting on behalf of the federal or a state government. United States v. Janis, 428 U.S. 433, 455-56 n.31 (1976). The fourth amendment does not apply to searches conducted by foreign authorities in their own country and in enforcement of foreign law. United States v. Heller, 625 F. 2d 5r94, 599 (5th Cir. 1980). It is well established that the Fourth Amendment's exclusionary rule does not apply to evidence obtained by searches in foreign lands conducted by foreign officials. United States v. Lee, 723 F.3d 134, 139 (2nd Cir. 2013) citing Janis, 428 U.S. at 455 n.31, (1976). This is because the exclusionary rule would have no deterrent effect on a foreign law enforcement agency. United States v. Valdivia, 680 F.3d 33, 51 (1st Cir. 2012) (quotation marks omitted); see also Cotroni, 527 F.2d at 712 ("The exclusionary rule is intended to inculcate a respect for the Constitution in the police of our own nation. Since it has little if any deterrent effect upon foreign police, it is seldom used to bar their work product." (internal citations omitted)); United States v. Barona, 56 F.3d 1087, 1091 (9th Cir. 1995) ("Neither our Fourth Amendment nor the judicially created exclusionary rule applies to acts of foreign officials." (quotation marks and alteration omitted)); United States v. Mount, 757 F.2d 1315, 1317-18, 244 U.S. App. D.C. 320 (D.C. Cir. 1985) ("[T]he exclusionary rule does not normally apply to foreign searches conducted by foreign officials.").

The Second Circuit identified two circumstances where evidence obtained in a foreign jurisdiction may be excluded. Those circumstances are first, the foreign official's conduct was so extreme that it shocks the judicial conscience, and second, when foreign law enforcement is

acting as an agent of U.S. federal agents or is cooperating with federal agents to evade constitutional requirements applicable to U.S. officials. U.S. v. Lee, 723 F.3d at 140; See also U.S. v. Odeh, 815 F.3d 968, 987 (6th Cir. 2016) ("The Fourth Amendment exclusionary rule applies to foreign searches and seizures if the defendant can show that the conduct of foreign police shocks the judicial conscience) (dissenting opinion) (citation omitted). Conduct does not shock the conscience when it is simply illegal; the conduct must be egregious. United States v. Getto, 729 F.3d 221, 228-29 (2nd Cir. 2013). In the present case, there is no allegation or evidence that the foreign law enforcement agency engaged in extreme conduct in obtaining the defendant's IP address from the subject child pornography website. Nor is there any evidence that the foreign law enforcement agency acted at the behest of the U.S. government or with intent to circumvent U.S. constitutional law. The Fourth Amendment is not implicated in this case because the search of the subject website was not conducted by or on behalf of the U.S. government. The exclusionary rule does not apply to foreign law enforcement conduct; therefore, the evidence in this case should not be suppressed.

## CONCLUSION

The defendant's motion to suppress should be denied because the warrant properly set out probable cause for the search and the information contained in the warrant was not stale. Additionally there is no fourth amendment violation when a foreign agency conducts a search on foreign soil.

Respectfully submitted,

MICHAEL A. BENNETT
United States Attorney

s/ *A. Spencer McKiness*

        A. Spencer McKiness
        Assistant U.S. Attorney
        717 West Broadway
        Louisville, Kentucky   40202
        PH:   (502)582-5911
        FAX: (502)582-5067
        Email:spencer.mckiness@usdoj.gov

## CERTIFICATE OF SERVICE

    I hereby certify that on February 17, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to counsel for the defendant.

        s/ *A. Spencer McKiness*
        A. Spencer McKiness
        Assistant United States Attorney