UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION


UNITED STATES OF AMERICA,                                                    Plaintiff,

v.                                                      Criminal Action No. 3:21-cr-155-DJH

JOSHUA WHITE,                                                               Defendant.

* * * * *

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendant Joshua White moves to suppress evidence seized by law enforcement officers during a search of his residence, asserting several defects in the warrant authorizing the search. (Docket No. 23)  The United States opposes White's motion, arguing that the warrant was valid. (D.N. 31)  For the reasons discussed below, the Court will deny White's motion to suppress.[1]

**I.**

On February 8, 2021, Homeland Security Investigations Special Agent John C. Koski, Jr. submitted an affidavit in support of a warrant to search White's residence, which the magistrate judge granted.  (D.N. 23-1)  The affidavit alleged that a foreign law enforcement agency had notified the Federal Bureau of Investigation that an IP address[2] located in the United States "access[ed]" the "Target Website," an online channel for users to "share and distribute child pornography."[3]  (D.N. 23-1, PageID # 84, 89)  The Target Website operated on the "Tor network,"

---

[1] White also moves to strike the exhibit the government attached to its response.  (D.N. 34; *see* D.N. 31-1)  The Court has not considered the government's exhibit in its decision and will therefore deny this motion as moot.

[2] An IP address, or "Internet Protocol" address, is "a unique numeric or alphanumeric string used by a computer or other digital device to access the Internet."  (D. N. 23-1, PageID # 80)

[3] The affidavit used the term "Target Website," rather than the actual name of the website, to prevent active website users from learning of the ongoing investigation.  (D.N. 23-1, PageID # 80, n.1)

which is a computer network designed to facilitate anonymous communication over the Internet. (*Id.*, PageID # 82)  The Tor network masks a Tor user's IP address so that website operators cannot trace the address to the user.  (*Id.*)  To access the Tor network, a user must install Tor software, which is most easily accomplished by downloading a "Tor browser."  (*Id.*)  The Tor network may be used to access open-Internet websites like www.uscourts.gov or websites that operate exclusively on the Tor network, which are also known as "hidden" or "onion" services.  (*Id.*, PageID # 83)

Unlike an open-Internet website, the Uniform Resource Locator (URL) or web address of a hidden service is made up of sixteen or fifty-six randomized characters, which a user must know exactly to access the website.  (*Id.*, PageID # 82, 84)  This makes hidden services such as the Target Website "much more difficult, if not impossible" to find accidentally or through a traditional search engine.  (*Id.*, PageID # 88, 91)  Users interested in accessing a particular hidden service therefore usually find the URL through either an individual who knows the URL or another hidden service.  (*Id.*, PageID # 88, 91–92)  Some hidden services operate as "directory sites" by maintaining a list of links to other hidden services.  (*Id.*)  The affidavit noted that the Target Website was listed on at least one directory site that "advertis[ed] hidden services dedicated to the sexual exploitation of children."  (*Id.*, PageID # 88–89)

The Target Website homepage could be accessed only if a Tor user knew the specific randomized URL and registered for an account.  (*Id.*, PageID # 85, 91)  Registration was free and required the user to create a "nickname" and a password.  (*Id.*, PageID # 85)  The registration page stated, "No hurtcore, No gore, No zoo, No death, No toddlers"[4] and "Post links with good photos

---

[4] According to the affidavit, these terms are often used to describe specific genres of child pornography.  (D.N. 23-1, PageID # 85)

and videos." (*Id.*, PageID # 84)  Once a user registered and logged onto the Target Website, the user could view the homepage, which "stated that the site was intended for users to 'post links with good photos and videos' depicting '[o]nly GIRLS 5 to 13 years [old].'" (*Id.*, PageID # 84, 91)  The Target Website contained chat rooms where users could communicate with one another. (*Id.*, PageID # 84)  It also advertised links to four other hidden services, which included descriptions such as "Forum for boy-and-girlovers" and "Girls pedo portal." (*Id.*, PageID # 87–88)  Registered users could view a "photo archive" of images and upload links to their own digital images. (*Id.*, PageID # 88)  Law enforcement officers accessed and downloaded child pornography images via these links. (*Id.*, PageID # 88, 90)

A foreign law enforcement agency investigating the Target Website notified the FBI that a United States-based IP address accessed the Target Website on April 11, 2019. (*Id.*, PageID # 89, 93)  The affidavit stated that the foreign agency had "a history of providing reliable, accurate information" and discovered the IP address through an investigation "that was lawfully authorized in the [foreign agency's] country pursuant to its national laws." (*Id.*, PageID # 89–90)  The affidavit further noted that the foreign agency did not access, search, or seize "any data from any computer in the United States" to obtain the IP address and that United States law enforcement did participate in the foreign agency's investigation. (*Id.*, PageID # 90–91)  The FBI ultimately identified White as the account holder of the IP address, and Koski submitted a warrant affidavit, asserting that there was probable cause to believe that White had accessed with the intent to view child pornography. (*Id.*, PageID # 93)  The affidavit did not state how long White allegedly accessed the Target Website. (*See* D.N. 23-1)

On February 8, 2021, a magistrate judge issued a warrant to search White's residence and seize any computer systems found on the premises. (*Id.*, PageID # 93, 104)  The FBI executed the

search on February 17, 2021.  (D.N. 31, PageID # 126)  On December 7, 2021, White was charged

with accessing with intent to view child pornography and possession of child pornography under

18 U.S.C. § 2252A(a)(5)(B).  (*See* D.N. 1)  White moves to suppress the evidence obtained through

the search, contending that the warrant failed to establish probable cause; the warrant was stale;

and the foreign agency's investigation violated the Fourth Amendment.  (D.N. 23)  The United

States opposes the motion.  (D.N. 31)

**II.**

**A.     Probable Cause**

Absent exigent circumstances, the Fourth Amendment requires law enforcement officers

to obtain a warrant based on probable cause "from a neutral and disinterested magistrate before

embarking upon a search."  *Franks v. Delaware*, 438 U.S. 154, 164 (1978).  "A police officer has

probable cause to conduct a search when the facts available to [the officer] would warrant a person

of reasonable caution in the belief that contraband or evidence of a crime is present."  *Florida v.*

*Harris*, 568 U.S. 237, 243 (2013) (alterations and internal quotation marks omitted).  Probable

cause "requires only a probability or substantial chance of criminal activity" and "depends on the

totality of the circumstances."  *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018) (quoting

*District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018)) (internal quotation marks omitted).

"[T]he relevant inquiry" in a probable-cause determination "is not whether particular conduct is

'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal

acts."  *Id.* at 586 (quoting *Wesby*, 138 S. Ct. at 588) (internal quotation marks omitted).  "Therefore,

'[p]robable cause is not a high bar.'"  *Id.* at 585 (alteration in original) (quoting *Wesby*, 138 S. Ct.

at 586).  Additionally, the issuing judge's determination "should be paid great deference," *Illinois*

*v. Gates*, 462 U.S. 213, 236, (1983), and "be left undisturbed if there was a 'substantial basis' for

4

the probable-cause finding." *Tagg*, 886 F.3d at 586 (quoting *Gates*, 462 U.S. at 238–39; *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000)).

White argues that the warrant affidavit failed to establish probable cause because it asserted that the Target Website did not itself contain child pornography—rather, it housed only "links to other sites alleged to contain [child] exploitative materials." (D.N. 23, PageID # 67) White contends that without an allegation that he viewed or downloaded child pornography, merely "accessing" a website that allegedly contains links to child pornography websites is insufficient to establish probable cause. (*Id.*) Contrary to White's contention, however, the affidavit asserted that White accessed the Target Website and that Special Agents were able to download child pornography images directly from the Target Website. (D.N. 23-1, PageID # 88, 90; *see* D.N. 23, PageID # 67)

Further, the Sixth Circuit's decision in *Tagg* forecloses the argument that merely visiting a child-pornography website does not establish probable cause. 886 F.3d at 584. In *Tagg*, the court held that a warrant affidavit established probable cause when it alleged that the defendant spent five hours browsing a Tor-network child pornography website but did not assert that he viewed or downloaded any images. *Id.* Importantly, the court noted that "visiting or subscribing to a website containing child pornography creates a reasonable inference that the user has stored child pornography on their computer." *Id.* at 586. The court based its decision in part on the unlikelihood that the defendant "stumbled upon [the Tor-based website] by accident," giving rise to "an inference that [he] deliberately accessed" the site. *Id.* at 587.

Similarly, the warrant affidavit in this case described how accessing the Target Website "require[s] numerous affirmative steps by [a] user." (D.N. 23-1, PageID # 92) A user must first download and install the Tor browser. (*Id.*, PageID # 82) The user must also know the exact

sixteen or fifty-six "algorithm-generated characters" of the Target Website, a hidden service. (*Id.*, PageID # 84)  As previously explained, a user cannot find this random combination through a traditional search engine like Google. (*Id.*)  Rather, users usually locate the website address through either "someone 'on the inside' who c[an] provide the exact sequence of numbers and letters to enter," *Tagg*, 886 F.3d at 587, or a directory site, a hidden service that list links to other hidden services. (D.N. 23-1, PageID # 91–92)  Additionally, a user must register for an account, which requires creating a nickname and password, to view the Target Website homepage. (*Id.*)  As in *Tagg*, the affirmative steps one must take to access the Target Website "create[] an inference" that the user "deliberately accessed" the site.  886 F.3d at 587.

Moreover, as in White's case, the court in *Tagg* found probable cause to search the defendant's residence for evidence related to the crime of knowingly accessing with intent to view child pornography.  *See id.* (citing § 2252A(a)(5)(B)).  The Sixth Circuit noted that this crime "does not require a showing that [an individual] actually viewed illegal content on the site."  *Id.* (citing § 2252A(a)(5)(B)).  Instead, "probable cause to search [the defendant's] house would exist even if he was 'curiosity shopping' for child porn on [the website] but never actually viewed an illegal image."  *Id.* at 587–88.  In other words, "'access-with-intent' liability is triggered when a person 'intentionally searche[s] for images of child pornography, f[inds] them,' but then stops short of viewing the images themselves."  *Id.* at 588 (alterations in original) (quoting *United States v. Ramos*, 685 F.3d 120, 130–32 (2d Cir. 2012)).  Accordingly, it was unnecessary for the warrant affidavit in this case to assert that White viewed child pornography.  *See id.*  Rather, the affidavit met the probable-cause requirement by stating that White accessed the Target Website and by containing facts that "create[d] a reasonable probability" that he "intended to view child pornography when he did so."  *Id.* at 588–89 ("[T]he affidavit need not 'show' that [the defendant]

had unlawful intent—it only needed to allege facts that create a reasonable probability that [he] had an unlawful motive." (citing *Wesby*, 138 S. Ct. at 586)); (*see* D.N. 23-1, PageID # 89–90)

As White points out (D.N. 23, PageID # 68), the affidavit does not state how long he spent on the Target Website or that he clicked on any images or links. (*See* D.N. 23-1)  This, according to White, indicates that he could have inadvertently accessed the site.  (D.N. 23, PageID # 68)  But given the affirmative steps that the affidavit alleges White took to access the Target Website, a reasonable magistrate judge could infer that White had stored child pornography on his computer. *See Tagg*, 886 F.3d at 586.  As the Sixth Circuit emphasized in *Tagg*, "the ultimate plausibility of an innocent explanation cannot be used to snuff out the objectively suspicious inference that can be drawn from the facts presented to a magistrate."  *Id.* at 589 (citing *Wesby*, 138 S. Ct. at 588). The search of White's residence and computers therefore was supported by probable cause.  *See id.* at 585–90; *see also United States v. Huyck*, 849 F.3d 432, 438–40 (8th Cir. 2017) (finding search warrant supported by probable cause when affidavit stated that defendant accessed a Tor-based child-pornography website, which "required numerous affirmative steps," for nine minutes (quoting *United States v. DeFoggi*, 839 F.3d 701, 707 (8th Cir. 2016)) (internal quotation marks omitted)).

B.    **Staleness**

The warrant affidavit in this case stated that White accessed the Target Website on April 11, 2019, approximately twenty-two months before law enforcement officers sought and executed the warrant in February 2021.  (*See* D.N. 23-1, PageID # 89; D.N. 31, PageID # 126)  White argues that the information in the affidavit was therefore stale.  (D.N. 23, PageID # 68–69)  Stale information cannot be used to support probable cause.  *See United States v. Frechette*, 583 F.3d 374, 377–78 (6th Cir. 2009) (citing *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)).

Whether information qualifies as stale depends "on the inherent nature of the crime." *Spikes*, 158

F.3d at 378. Courts consider four factors in the staleness determination:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?), (2) the criminal (nomadic or entrenched?), (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

*Frenchette*, 583 F.3d at 378 (citing *United States v. Abboud*, 438 F.3d 554, 572–73 (6th Cir. 2006)).

White argues that the first *Frenchette* factor supports a finding that the warrant was based

on stale information because the affidavit described only a single incident in which White allegedly

accessed the Target Website and did not assert "any purchases, subscriptions, downloads, [or]

lengthy repeat visits." (D.N. 23, PageID # 69) But as the government notes, the Sixth Circuit has

"explained on multiple occasions" that "child pornography is not a fleeting crime." *Frenchette*,

583 F.3d at 378. Although the warrant in *Frenchette* was based on activity that occurred sixteen

months before the search, the court relied on the law enforcement officer's assertion in the warrant

affidavit that "evidence of child pornography downloading often remains on a computer for

lengthy periods of time." *Id.* (citing *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008)

(holding that courts may give "considerable weight to the conclusion of experienced law

enforcement officers regarding where evidence of a crime is likely to be found")).

Similarly, Koski stated in the warrant affidavit that in his experience, individuals who

possess child pornography "typically retain those materials . . . for many years." (D.N. 23-1,

PageID # 96) Even if an individual attempts to delete the materials, he asserted, "the very nature

of electronic storage means that evidence of the crime is often still discoverable for extended

periods of time." (*Id.*, PageID # 97) Thus, the first *Frenchette* factor does not support a staleness

finding here. *See* 583 F.3d at 378; *see also United States v. Elbe*, 774 F.3d 885, 890–91 (6th Cir.

2014) (discussing the Sixth Circuit's "relaxed approach" towards "temporal requirements in child pornography cases" and noting that "[w]ith child pornography . . . agents can recover erased, hidden, or encrypted files from hard drives").

The second factor—whether the defendant is "nomadic or entrenched"—also supports a finding that the warrant was not based on stale information. *See Frenchette*, 583 F.3d at 379. The court in *Frenchette* noted that "all of the evidence indicated the defendant lived in the same house for the entire sixteen months in question" and thus established that the defendant was not "nomadic." *Id.* Likewise, White concedes that he was "entrenched in his life" because he lived in his home from the date of the alleged incident until the search of his residence. (D.N. 23, PageID # 70) Accordingly, this factor weighs against a holding that the information in the affidavit was stale. *See Frenchette*, 583 F.3d at 379.

White argues that the third factor supports a staleness finding because the affidavit does not contain information "corroborating an interest in child pornography." (D.N. 23, PageID # 70) But corroborating evidence is not considered in the staleness determination. *See Frenchette*, 583 F.3d at 379. Rather, the Sixth Circuit has consistently held that digital images of child pornography "can have an infinite life span" because they "can be easily duplicated and stored indefinitely." *Id.* (citing *United States v. Terry*, 522 F.3d 645, 650 n.2 (6th Cir. 2008) ("Images typically persist in some form on a computer hard drive even after the images have been deleted and, as ICE stated in its affidavit, such evidence can often be recovered by forensic examiners.")). Koski's affidavit similarly described how evidence of child pornography on computers "is often still discoverable for long periods of time." (D.N. 23-1, PageID # 97) This factor therefore weighs against a staleness finding. *See Frenchette*, 583 F.3d at 379; *see also United States v. Hampton*, 504 F. App'x 402, 404 (6th Cir. 2012) ("Collectors of child pornography 'value their sexually explicit

material highly, rarely if ever dispose of such material, and store it for long periods in a secure place, typically in their homes.'" (quoting *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir. 2010))).

The fourth and final factor is the place to be searched. *Frenchette*, 583 F.3d at 379.  White does not address this factor.  (*See* D.N. 23)  Nevertheless, White's residence was the place to be searched, and a residence is a "secure operational base."  *Elbe*, 774 F.3d at 891; *Frenchette*, 583 F.3d at 379 ("The place to be searched in this case was the defendant's residence, which is clearly a 'secure operational base.'" (citing *United States v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009))).  Thus, this factor does not support a staleness finding.  *See Frenchette*, 583 F.3d at 379.

In sum, all four *Frenchette* factors support a finding that the information in the affidavit was not stale.  *See id.* at 378–79.  Because crimes related to child pornography are "generally carried out in the secrecy of the home and over a long period, the same time limitations that have been applied to more fleeting crimes do not control the staleness inquiry for child pornography." *Paull*, 551 F.3d at 522 (citing *Wagers*, 452 F.3d at 540).  Although the affidavit alleges that White accessed a child pornography site on the Tor network once, child pornography offenses are not "fleeting," *Frenchette*, 583 F.3d at 378, and "evidence that a person has visited" such a website "supports the conclusion that [the individual] has likely downloaded, kept, and otherwise possessed the material."  *Wagers*, 452 F.3d at 540.  Moreover, "child pornography has a potentially infinite lifespan" and "can be uncovered on a hard drive even if th[e] images have been deleted." *Elbe*, 774 F.3d at 891 (citing *Terry*, 522 F.3d at 650 n.2).  White was "entrenched" by living in the same residence, "a secure operational base," during the twenty-two-month period.  *Frenchette*, 583 F.3d at 379.  Therefore, the information contained in the warrant affidavit was not stale.  *See id.* at 378–79; *Paull*, 551 F.3d at 522–23.

C.      **Foreign Law Enforcement Agency**

White argues that the warrant affidavit failed to provide the issuing judge with sufficient information related to the foreign law enforcement agency's investigation.  (D.N. 23, PageID # 71)  As White points out (*id.*), warrants authorizing the procedures used to infiltrate Tor in the United States "have been the subject of much litigation."  *Tagg*, 886 F.3d at 584 n.3 (citing *United States v. Kahler*, 236 F. Supp. 3d 1009, 1017–18 (E.D. Mich. 2017) (collecting cases)).  Consequently, White asserts that the techniques used by the foreign agency in this case also implicate constitutional concerns.  (D.N. 23, PageID # 71–73)

The Fourth Amendment, however, does not "extend to foreign government actions in foreign territories, even when directed against a United States citizen."  *United States v. Serhan*, No. 14-20685, 2015 WL 3578744, at *2 (E.D. Mich. June 5, 2015) (citing *United States v. Janis*, 428 U.S. 433, 455 n.31 (1976) ("It is well established of course, that the exclusionary rule, as a deterrent sanction, is not applicable where a private party or a foreign government commits the offending act.")); *see also United States v. Lee*, 723 F.3d 134, 140 (2d Cir. 2013) ("[S]uppression is generally not required when the evidence at issue is obtained by foreign law enforcement officials."); *United States v. Mount*, 757 F.2d 1315, 1317–18 (D.C. Cir. 1985) ("[T]he exclusionary rule does not normally apply to foreign searches conducted by foreign officials." (collecting cases)).  Some circuit courts have identified two circumstances in which suppression is appropriate even when evidence was obtained by a foreign government.  *See, e.g.*, *United States v. Minaya*, 827 F. App'x 232, 236 (3d Cir. 2020); *Lee*, 723 F.3d at 140; *United States v. Valdivia*, 680 F.3d 33, 51 (1st Cir. 2012).  These courts have held that evidence may be suppressed where the foreign government's actions are "so extreme" that they "shock the judicial conscience."  *United States v. Maturo*, 982 F.2d 57, 60 (2d Cir. 1992).  Additionally, where the United States cooperates with

foreign law enforcement officials "to evade constitutional restrictions" or when foreign officials act as "agents" of the United States, a court may suppress evidence obtained by the foreign officials. *Id.* at 61.  These exceptions have also been recognized by courts within the Sixth Circuit. *See, e.g.*, *Serhan*, 2015 WL 3578744, at \*2 (citing *United States v. Yakoob*, No. 07-20084, 2009 WL 270161, at \*4 (E.D. Mich. Feb. 3, 2009)); *cf. United States v. Odeh*, 815 F.3d 968, 987 (6th Cir. 2016) (Batchelder, J., dissenting) ("The Fourth Amendment exclusionary rule applies to foreign searches and seizures if the defendant can show that 'the conduct of foreign police shocks the judicial conscience.'" (quoting *Valdivia*, 680 F.3d at 51)).

White does not argue, however, that these exceptions apply to his case.  (*See* D.N. 23) Moreover, the warrant affidavit stated that the United States did not participate in the foreign law enforcement agency's investigation.  (D.N. 23-1, PageID # 90–91)  The Court therefore cannot find that the foreign law enforcement agency's investigation requires suppression. *See Janis*, 428 U.S. at 455 n.31; *Minaya*, 827 F. App'x at 236.

**D.      Good-Faith Exception**

Even if the warrant affidavit did not establish probable cause to search White's residence, the good-faith exception outlined in *United States v. Leon*, 468 U.S. 897, 922 (1984) would apply. "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir. 2004) (quoting *Illinois v. Krull*, 480 U.S. 340, 347 (1987)) (internal quotation marks omitted).  Nevertheless, courts should not suppress "evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant." *Leon*, 468 U.S. at 922.  There are four exceptions to the *Leon* good-faith rule:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless

12

disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006) (citing *Leon*, 468 U.S. at 923).

White argues that the third exception—the "bare bones" exception—applies here. (D.N. 23, PageID # 73) He contends that the affidavit contained only "boilerplate language," which was so insufficient that an objectively reasonable officer would not have relied on it. (*Id.*, PageID # 73–74) The Sixth Circuit, however, has "reserve[d]" the bare-bones classification for affidavits that "merely 'state[] suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (en banc) (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004)). In other words, a bare-bones affidavit is one that "states 'only the affiant's belief that probable cause existed.'" *Id.* at 313 (quoting *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000)) (internal quotation marks omitted).

Contrary to White's argument and as previously discussed, the warrant affidavit in this case contained specific factual allegations tying White's residence, through his IP address, to the Target Website. (*See* D.N. 23-1) And "[a]n affidavit need only present '*some* connection, regardless of how remote it may have been,' . . . to avoid the bare-bones designation." *Christian*, 925 F.3d at 313 (quoting *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017)). Accordingly, the Court finds that the *Leon* good-faith exception applies, and evidence seized from White's residence would be admissible even if the warrant affidavit lacked probable cause. *See id.* at 312–13; *United States v. Prine*, No. 5:17-CR-20-TBR, 2018 WL 2710689, at *8 (W.D. Ky. June 5,

2018) (finding the *Leon* good-faith exception applied when the warrant affidavit stated that a foreign government informed United States law enforcement officers that an individual uploaded a single image of child pornography to a messaging application from defendant's IP address).

## III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     White's motion to suppress (D.N. 23) is **DENIED**.

(2)     White's motion to strike (D.N. 34) is **DENIED** as moot.

March 9, 2022

David J. Hale, Judge
United States District Court

14