UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES of AMERICA,

        Plaintiff

vs                                    Crim. No. 3:21-cr-155-DJH
                                    Hon. David J. Hale

JOSHUA WHITE,

        Defendant
_____

**WHITE'S MOTION FOR *FRANKS* HEARING**

JOSHUA WHITE, through counsel, Jonathan M. Epstein and Wanda M. Dry, respectfully move this Honorable Court for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) and the Fourth Amendment, based on materially false statements and omissions contained in the Search Warrant Affidavit, and in support, states:

    1.      Mr. White is charged in an Indictment with possession of child pornography relative to deleted images dating back to the years 2009-2010, contrary to 18 U.S.C. §2252A(a)(5)(B) and §2252A(b)(2).

    2.      This case arises from a Search Warrant wherein H.S.I. Agent John C. Koski, Jr. alleged "[t]here is probable cause to believe that a user

of the internet at the subject premises accessed the Target Website, as further described herein" in April 2019. (SWA §7).

    3.    Agent Koski advised "Target Website was an **online chat site**[1]…[which] allowed users to engage in **online chat** with other users, either within chat rooms that were openly accessible to any user…" *Id.* at §16.

    4.    That CP images were not and **could not be displayed on the chatsite** as this would be an impossibility; rather Affiant advised "links allowed a user to navigate to **another website…where images and/or videos were stored in order to download these images and videos.**" *Id.* at §16.

    5.    Affiant advises he "received and reviewed several files depicting child sexual abuse materials that were available **on the Target Website**" and provided "still images of the files referenced…" *Id.* at §29, however per screen shots provided in discovery, this statement is materially false. *Franks v. Delaware*, 438 U.S. 154, 164-165 (1978).

---

[1] Affiant defined chat as "any kind of text communication over the internet that is transmitted in real time from sender to receiver…" SWA, para. 6(b) and defined "chat room" as the ability of individuals to meet in one location on the internet in order to communicate…to other individuals." SWA 6(c).

2

6. Affiant further alleges subject IP address "accessed the site" failing to indicate White only accessed a chatsite, not the "other website" containing illicit materials, or images which is also misleading and a material omission. *Id.* at §29; *Franks, supra.*

7. SWA §29 is false and misleading in that "in order to pass through the registration page and gain access to the actual content of the Target Website, a prospective user must create a nickname and a password which must be entered along with a Captcha" which White had not done. *Id.* at §18[2].

8. This Court relied upon these statements in SWA §29 to deny suppression holding "[c]ontrary to White's contention, however, the affidavit asserted that White accessed the Target Website, and that Special Agents were able to download child pornography images directly from the Target Website." (Order; R. 35, p.5).

9. This Court further held probable cause to search White's home would exist even if he was "curiosity shopping" for child porn but never actually viewed an illegal image citing *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018) *Id.*, p. 6.

---

[2] The Government concedes via discovery response there was no username, password nor duration of access.

3

10. However, SWA omits material exculpatory facts that White's alleged contact with Target Website was of **zero duration** indicating such contact could have been in error or by mistake and is not "presumed" pursuant to *Tagg, supra* at 585.

11. On August 17, 2022, the Government provided (1) a registration page screenshot (2) Target chatsite rules and (3) Target chatsite screenshot, which are exculpatory in that no images nor "thumbnails" of illicit images are displayed (Exhibit "A" , to be filed under seal).

12. Affiant knew or should have known; (1) images shown to the magistrate judge **were not** on Target Website (2) White did not access Target Website on the date and time indicated, (3) White did not possess requisite log-in name, password nor credentials and (4) no duration infers no access or possession. *Tagg, supra.*

13. As White has demonstrated materially false statements or reckless disregard of the truth, and material exculpatory omissions, he has made a "substantial preliminary showing" he is entitled to a *Franks* Hearing.

14. Lastly, subject IP address' alleged fleeting contact with a chatsite is not a criminal offense but protected First Amendment speech and activity. *Reno v. A.C.L.U.*, 521 U.S. 844 (1997).

15. The Government does not concur in the relief requested.

WHEREFORE, Defendant JOSHUA WHITE respectfully prays this Honorable Court Order a "*Franks* Hearing" as to the misstatements and material exculpatory omissions in the SWA and suppress evidence pursuant to the search warrant.

                                          Respectfully submitted:

                                          /s/ Jonathan Epstein
                                          Jonathan M. Epstein
                                          Attorney for Defendant White
                                          30445 Northwestern Hwy, Suite 225
                                          Farmington Hills, MI 48334
                                          (248) 219-4004

Dated: May 6, 2024

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES of AMERICA,

        Plaintiff

vs                                          Crim. No. 3:21-cr-155-DJH
                                               Hon. David J. Hale

JOSHUA WHITE,

        Defendant

## MEMORANDUM IN SUPPORT
## OF MOTION FOR FRANKS HEARING

    A search warrant affidavit must provide a "substantial basis" evidence will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "When the Fourth Amendment demands a factual showing sufficient to comprise 'probable cause,' the obvious assumption is that there will be a truthful showing…in the sense that the information put forth is believed or appropriately accepted by the affiant as true." *Franks v. Delaware*, 438 U.S. 154, 164-65 (1978).

    "Because it is the magistrate who must determine independently whether there is probable cause…it would be an unthinkable imposition upon his [or her] authority if a warrant affidavit, revealed after the fact to contain a deliberately or reckless false statement, were to stand

beyond impeachment." *Id.* at 165. Thus, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155-56.

To obtain a *Franks* hearing, a defendant must (1) "make[] a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit" and (2) "prove[] that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Young*, 847 F.3d 328, 348-49 (6th Cir. 2017) (quoting *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015) (citations omitted).

When a material omission is claimed, the petitioner must make "a strong preliminary showing that the affiant, with an intention to mislead, excluded critical information from the affidavit." *Mays v. City of Dayton*, 134 F.3d 809, 816 (6th Cir. 1998). A "reckless disregard for the truth" in omitting material information from the affidavit with a finding

7

that probable cause would not be supported by the affidavit if the omitted material were considered to be a part of it, also suffices to require a hearing. *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008) (citations omitted); *Franks, supra.*

Where a defendant has identified a particular statement is demonstrably false, or in reckless disregard of the truth, by a preponderance of the evidence, the warrant must be voided, and evidence or testimony gathered pursuant to it must be excluded. *Franks, supra.* at 156. For example, in *United States v. Hammond*, 351 F.3d 765, 771 (6th Cir. 2002), the Sixth Circuit reversed where defendant argued the affidavit contained materially false information that marijuana was growing on his property, holding without corroboration, the affidavit was insufficient to establish probable cause.

A warrant held invalid under these circumstances "is not subject to the good-faith exception to the exclusionary rule pursuant to *United States v. Leon,* 468 U.S. 897, 923 (1984)." *Id.* When an officer secures a warrant based on information known to be false, or in reckless disregard of the truthfulness or falsity of the information presented to demonstrate probable cause, he or she has not acted in good faith. And such a person

8

obviously cannot in good faith rely on the magistrate's issuance of the warrant as an independent judicial finding of probable cause. *Id.*

In this case, White makes a "substantial preliminary showing" SWA §§11, 15, 29 and 30 are false and misleading and that the Affidavit contains material exculpatory omissions. Affiant established "Target Website was an **online chat site**…[which] allowed users to engage in online chat with other users, within chat rooms that were openly accessible to any user…" SWA §16. Affiant advised "[**i]n order to pass through the registration page and gain access to the actual content** of the Target Website, a prospective user must create a nickname and a password which must be entered along with a Captcha." *Id.* at §18.

On August 17, 2022, in a discovery response, the Government provided; (1) a screen shot of the registration page (Bates 156); (2) a screenshot showing the chat rules within Target Chatsite (Bates 153) and (3) a screenshot showing the Target Chatsite chat area. None of these actual screenshots show or contain any images nor "thumbnails" of illicit images or CP (Exhibit "A", to be filed under seal). The screenshots, provided after the Order denying White's motion to suppress,

9

unmistakenly shows no illicit images on the site. Indeed, if the screenshots can be provided and published to Counsel over email in discovery without having Counsel come to H.S.I. to review, this shows the screen shots of Target Website **did not contain contraband at that time** and do not contain illicit CP images. Thus, Affiant knew, or should have known, there were no illicit images on the chatsite.

As Affiant possessed the relevant screenshots, yet these images were not shared with Magistrate-Judge Edwards and were omitted. In its stead, highly inflammatory images from the "other website" were provided, thereby misleading the Magistrate Judge and thus exculpatory evidence was omitted that White never accessed the links that Affiant accessed. As Affiant showed Magistrate Judge Edwards disturbing and illicit images not accessed by White, this inflamed and prejudiced the Magistrate Judge. However, strictly online "chats" are protected free speech. *Reno v. A.C.L.U.*, 521 U.S. 844 (1997) (First Amendment applies to communications on the internet).³

---

³ Affiant misrepresented certain technical aspects of the TOR network stating "[A] *Tor-based web address is comprised a series of either 16 or 56 algorithm-generated characters*." SWA ¶15. However, the chatsite's 16 non-random URL began with the letters "chator", a conjunction of "Chat" and "Tor." The complete URL gave no indication of the subject matter *other* than it was a chatsite which could be reached unintentionally or accidentally. (Ahmia.fi and TORch³ search engines). Further, just as on the regular internet, innocent users can be lured by innocuous looking spam hyperlinks disguised to drive traffic to specific websites, by misrepresentation. Lastly, Tor's

10

Further, Affiant failed to advise Magistrate Judge Edwards of exculpatory investigative information that White never created a nickname, password, or Captcha necessary to passing through the guest registration page to access links containing CP as Affiant had. Nor was White a "member" of the Target site, also omitted. As indicated in *Tagg,* these are material and significant factors, yet were omitted in the SWA as this was necessary to Affiant accessing illicit material[4].

Most significantly, however, the SWA omits the **duration** of contact was zero, and is insufficient to presume access or possession. While this Court held probable cause would exist even if White was "curiosity shopping" but never actually viewed an illegal image (Opinion, p.6), an access of zero duration, basically a fleeting moment, is insufficient to

---

operation is anonymous by design, and the only place a user's IP address is provided or known to the TOR network is the first node (guard/entry node) and any revelation of the IP address would require that entry node "access" is user's computer or ISP in the United States. This contravenes Affiant's statement that *"In order for a Tor user's communications to be routed through the Tor network, a Tor user necessarily (and voluntarily) shares the user's IP address with Tor network relay computers, which are called "nodes*." SWA ¶11 and "*FLA further advised United States law enforcement that FLA had not interfered with, accessed, searched or seized any data from any computer in the United States in order to obtain that IP address information.*", SWA ¶30. As the **only way** to obtain IP information is through the user's computer, this is likewise a false statement.

[4] The SWA also omits information that Chatsite software (Le-Chat. php) had an "Entry Wait" system employed at the time, which prevented a user, with nor duration, from passing through the registration page and accessing the secure area of the Chatsite, another material omission.

11

presume possession under *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018)

In *Tagg*, the warrant affidavit provided defendant spent **five hours** browsing a Tor-network child pornography website. The Sixth Circuit noted "visiting or subscribing to a website containing child pornography creates a reasonable inference that the user has stored child pornography on their computer." *Id.* at 586, as opposed to "stumbl[ing] upon [a site] by accident." *Id.* And Tagg was a registered member and successfully accessed the site for over five hours. *Tagg* distinguished *United States v. Falso*, 544 F.3d 110, 121 (2nd Cir. 2008), wherein the defendant tried (possibly unsuccessfully) to access a website containing child pornography. *Falso* held probable cause could not exist under those circumstances unless the warrant contained "specific allegations" that defendant actually viewed child pornography. *Id.* The Second Circuit reversed the district court's conclusion to the contrary.

Here, a reasonable inference given the fleeting contact, lack of membership and lack of log-in credentials, under *Tagg* and *Falso*, raises a **converse inference;** that no CP images were viewed or downloaded and thus would not be present at the target home. This case is more akin

12

to *Falso* and easily distinguished from *Tagg* as White was not a "member" (which infers a collector of such materials), spent no time on the site and did not possess the necessary log-in credentials. Thus, Counsel respectfully requests a *Franks* hearing to address these facts.

Obviously, it appears Affiant entered a username, password, and Captcha and **then** "clicked on a link" on the page revealing illicit images. However, there is no statement that White successfully entered the site. Thus, as in *Falso*, there is no statement White followed any of these steps or procedures to access or possess CP. Given the duration of contact was zero, this raises a contrary preemption. As this information was omitted and was insufficient and not explained to Magistrate Judge Edwards, H.S.I. misled the Magistrate Judge that illicit images were taken by White directly from Target Chatsite. See SWA, §25.

As such, SWA §§11, 15, 29 and 30 provided false information to Magistrate Judge Edwards, coupled with material exculpatory omissions, that are contrary to an access or possession. Affiant, based on screenshots taken at the time, knew images were located on "another website" which White had not accessed. He also knew from screenshots that there was no membership, and the duration of contact were likely

13

exculpatory under *Tagg*; and thus, there was no "substantial basis" to conclude CP images would be located in the home. Indeed, H.S.I. found no evidence of access or possessions at the time FLA reported a "contact." Thus, "the proof's in the pudding" as no images from Target Website were located in approximately 29 computers, laptops, hard drives, and storage devices in the White family home.

As Magistrate-Judge Edwards was falsely advised and misled, a *Franks* hearing is required wherein new Counsel may cross-examine Affiant and present evidence to this Honorable Court. Accordingly, Mr. White has made "a substantial preliminary showing" that a false statement knowingly and intentionally, or with reckless disregard for the truth, and material omissions, were included in the Warrant Affidavit, to justify a hearing be held pursuant to *Franks v. Delaware*.

WHEREFORE, Defendant White requests this Honorable Court order a hearing to determine whether, after excising said misinformation and/or adding the omitted material information, the warrant still provides probable cause to have searched the White Family home.

Respectfully submitted,

/s/ Jonathan Epstein
Jonathan M. Epstein
Attorney for Defendant White
30445 Northwestern Hwy, Suite 225
Farmington Hills, MI 48334
jonathan@jonathanmepstein.com
(248) 219-4004

Dated: May 6, 2024