UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES of AMERICA,

        Plaintiff

Vs                                  Crim. No. 3:21-cr-155-DJH

                                      Hon. David J. Hale

JOSHUA WHITE,

_____ Defendant

**MOTION TO SUPPRESS**

**"FRUIT OF THE POISONOUS TREE" EVIDENCE**

       The defendant, JOSHUA WHITE, through counsel Wanda M. Dry, pursuant to Fed. R. Crim. P. 12 and the Fourth Amendment, respectfully moves this Honorable Court to suppress all evidence and illegal fruits obtained pursuant to the 2021 Search Warrant issued in this case, as the search warrant affidavit (SWA) and search warrant were fruits of the poisonous tree of a wrongful warrantless search that occurred in Brazil.

**INTRODUCTION**

       In 2019 the United States, Brazil, the United Kingdom's NCA, and likely other countries, had a joint operation in Brazil in which they used some unidentified and presumably illegal search method to de-anonymize IP addresses of Tor users who allegedly were attempting to access CP websites. See exhibit 1 that will be filed, ANPR

Translation Describing the Brazilian Operation.

In this case, the SWA provided that:

> HSI Special Agents received information from a foreign law enforcement agency (referenced herein as "FLA") known to the FBI and with a history of providing reliable, accurate information in the past, notified the FBI that FLA determined that on April 11, 2019, IP address 104.49.245.246 "was used to access online child sexual abuse and exploitation material" via a website that the FLA named and described as the TARGET [CHATSITE]. The FLA was able to identify the IP address 104.49.245.246 utilizing FLA established legal undercover methodologies and techniques. (SWA, para. 28).

This information was false, misleading, and generated from a multi-national operation which violated the Fourth Amendment.

## ARGUMENT

### 1. The Fourth Amendment Extends to the Search in this Case

The Fourth Amendment of the United States Constitution guarantees the right to be secure against "unreasonable searches and seizures" and requires that no warrants issue "but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched." U.S. Const. Am. IV.

The Supreme Court has held that the Fourth Amendment does not extend to a search conducted outside the United States…(*United States v. Vatani*, No. 2:06-cr-20240-DN-45, at 6 (E.D. Mich. 2006). Unless at least one of two exceptions apply.

Both exceptions apply in this case, as "(1) the foreign government's conduct is 'shocking to the conscience' [and] (2) [ ] U.S. agents participated in the foreign search or the foreign government was acting as the agent of its U.S. counterpart." *Mitro*, 880 F.2d at 1482 (citing *United States v. Hensel*, 699 F.2d 18, 25 (1st Cir. 1983)). Quoted from *United States v. Vatani*, No. 2:06-cr-20240-DN-45, at 12-13 (E.D. Mich. 2006)

"Courts have found American officers' involvement in a search conducted by foreign officers sufficient to satisfy the joint venture exception" in cases similar to this one. *United States v. Vatani*, No. 2:06-cr-20240-DN-45, at 13 (E.D. Mich. 2006)

In this case, the US was substantially involved from the initial investigations dating back to at least 2017, becoming more directly involved during the actual search period from March-June of 2019. See Exhibit 1 that will be filed, ANPR Translation Describing the Brazilian Search Operation.

Furthermore, in *U.S. V. Peterson*, 812 F.2d 486 (1987), the Court concluded that the operation was a joint venture because, "United States agents, termed their actions a "joint investigation" in their own testimony." Id. at 490. US agents have made the same admission about the operation involved in this case (see Exhibit 2 that will be filed, excerpt from trial in *U.S. v. Dugan,* No. 2:21-cr-00127-DN-154, at 61 (D. W.Va. 2021). Therefore, this court should also reach the same conclusion that the fourth amendment applies.

The other exception also applies, as the conduct of the US Government, and

partnering FLAs, is "shocking to the conscience" in multiple ways.

First, according to the defense's independent investigation, the UK's NCA used TEI warrants instead of TI warrants as authority for their traffic analysis. This was an invalid use of a TEI warrant according to the UK's law; TEI warrants are only to be used for data that is stored, and not to be used for interception of traffic, as they did here. The singular reason they chose TEI warrants is because evidence from a TI warrant would have been inadmissible in their courts, as well as the US courts. This alone is enough to shock the conscious.

Furthermore, the method utilized[1] (either a NIT or traffic analysis) could only be unlawful and/or vastly unreliable, which also shocks the conscious. Although the Government has never revealed the methodology, based upon independent research and knowledge from other cases from the same investigation, it is clear that the method was not reliable. There are multiple instances we have uncovered in which the Government's search methodology has proven unreliable. For instance, in the *U.S. v Dugan* case, the government admits that it cannot explain why there is no evidence to substantiate the government's claim that Mr. Dugan was even using Tor on the day that they alleged that he visited the Target Websites. See Exhibit 4 that will be filed, Trial Testimony excerpt from trial in *U.S. v. Dugan,* No. 2:21-cr-00127-DN-154, at 64-65 (D. W.Va. 2021).

---

[1] A Tor expert declaration submitted in a case virtually identical to Mr. White's suggests that  the specific IP address could not have been identified without running a NIT (Malware), or, in the alternative, an error-prone traffic analysis technique. *See* Declaration of Steven Murdoch. (See Exhibit 3 that will be filed. *United States v. Sanders*, No. 20-cr 00143 (E.D. Va. Sept. 17, 2021), ECF No. 464-2)

The same holds true for Mr. White, who has offered to present in-camera evidence to the court that the government cannot substantiate the tip related to him either.

### 2. The Government Conducted Unlawful Searches in Brazil

"It is well settled under the Fourth Amendment that a warrantless search is per se unreasonable subject only to a few specifically established and well-delineated exceptions." *United States v. Trice* 966 f.3d 506 at 512 (6th Circuit 2020) Because none of the exceptions apply here, the government has violated the Fourth Amendment by failing to procure a warrant before conducting the two searches at issue.  Furthermore, due to the lack of reliability of the search methodology, and the overbreadth of the proposed searches, no valid search warrant could have been obtained prior to the searches at issue.

"Under Fourth Amendment jurisprudence, there are two ways in which government action may constitute a search." *United States v. Trice* 966 f.3d 506 at 512 (6th Circuit 2020) In the instant case, both ways were used, resulting in two separate violations of the Fourth Amendment.

First, "a search occurs when 'a government official invades an area in which "a person has a constitutionally protected reasonable expectation of privacy."'" Id. (quoting *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019) (in turn quoting *Katz v. United States*, 389 U.S. 347, 360, (1967) (Harlan, J., concurring))).

Information in a publicly accessible area is protected if the person takes steps to secure the information from plain view and as a result has a reasonable expectation of privacy. *Katz v. United States,* 389 U.S. 347 at 351 (1967).

In Katz, the court found that because Mr. Katz sought to preserve his communication as private, even though it was in a public area, it was constitutionally protected. Id at 351. (Citations Omitted).

Likewise, Tor Users seek to preserve their communications as private, even though they are in a public area and, likewise, those Tor communications are constitutionally protected from Governmental intrusion without a warrant.

The Tor Network is a "computer network available to Internet users that is designed specifically to facilitate anonymous communication over the Internet. . . . Because of the way the Tor network routes communications through the relay computers, traditional IP address-based identification techniques are not effective." (SWA Para. 9)

Hidden services, like the TARGET CHATSITE, "have unique technical features that attempt to conceal the computer server's locations", and "they operate in a manner that attempts to conceal the true IP address of the computer hosting the website." (SWA Para. 14)

The Government acknowledged in the SWA, that attempting to remain anonymous is a primary reason for using Tor. And while Tor does not guarantee

absolute anonymity all the time, the steps taken are clearly even more elaborate than entering a telephone booth, shutting the door behind oneself, and paying the toll to make a call, which the court found were sufficient reasonable steps taken to ensure privacy. *Katz v. United States,* 389 U.S. 347 at 352 (1967).

Furthermore, Tor users know that one would have to go to extremes in order to deanonymize them. The Government admits as much in its SWA. Thus, Tor users have a reasonable expectation of privacy, and their Tor communications are protected by the fourth amendment.

When the US, UK, and Brazil (and possibly Germany or other FLAs) cast the wide net to catch Tor users, the fourth amendment rights of those users were violated. Due to the unreliability of the method used to cast the net, IP addresses of innocent users, such as Mr. White, were ensnared in the net in spite of not even being present on the TARGET CHATSITE at the time alleged in their SWAs.

There was no lawful warrant issued for the search of the IP addresses in the Brazilian operation. The basis for the initial seizure of IP addresses was not sufficiently narrow to establish probable cause. Instead, it was more like a broad net to catch every person allegedly using Tor, regardless of whether those persons were in the process of committing a crime or not. Instead of capturing IP addresses for only those users who actually attempted to access a CP website by entering any security information to pass through any security barrier, the net was cast so widely that it trapped innocent bystanders who just happened to be passing through on their way to

a legitimate site. In addition, the method used was so unreliable it generated false positives; and generated false tips for users that were not even connected to Tor at the alleged time.

The second unlawful, unwarranted search occurred when the Government accessed Mr. White's computer at some point during their two-month long fishing expedition. At the point in which a real IP address was surrendered to the FLA , a "handshake" by the owner's computer would have been required via the faulty Traffic Analysis technique, therefore the assertion that the FLA didn't access any computer in the US is false. Because Mr. White was never on the TARGET CHATSITE, nor was he even using Tor at the time alleged in the SWA, the generation of his IP address could not have occurred with any legitimacy, and can only be explained by the use of an unreliable method.

"[W]hen the government gains information by physically intruding into a constitutionally protected area—namely, 'persons, houses, papers, and effects,' U.S. Const. amend. IV—'a search within the original meaning of the Fourth Amendment' has 'undoubtedly occurred.'" Id. (quoting Morgan, 903 F.3d at 561 (in turn quoting Florida v. Jardines, 569 U.S. 1, 5, 133 S. Ct. 1409, 185 L. Ed. 2d 495 (2013))) *United States v. Trice* 966 f.3d 506 at 512 (6th Circuit 2020).   When the "handshake" occurred, it was a physical intrusion into a constitutionally protected area, which violated the fourth amendment.

## CONCLUSION

This Court should suppress all the evidence obtained as a result of the search warrant, which were the fruits of the poisonous tree from an unlawful search in Brazil. In the alternative, the Defense respectfully requests a hearing on this matter.

Respectfully submitted,

*/s/ Wanda McClure Dry*
Wanda McClure Dry
P.O. Box 2122
Danville, Kentucky 40423
(859) 583-0037
wandadry@gmail.com
*Co-counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 6th, 2024, the foregoing motion was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

/s/ Wanda M. Dry
*Co-Counsel for Defendant*