UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES of AMERICA,
      Plaintiff

Vs                   Crim. No. 3:21-cr-155-DJH
                     Hon. David J. Hale

JOSHUA WHITE,
      Defendant

**Reply to Government's Response to Motion To Reconsider Motion to Compel Discovery**

  Comes the defendant, Joshua White, through counsel Wanda M. Dry, and for his reply to the Government's response to Motion to Reconsider Motion to Compel Discovery, he states:

  For over two years, the Defense has been trying to get the Government to produce *Brady*, *Giglio*, Rule 16, and possibly, *Jencks* material, that is crucial to the preparation of the Defense at trial, and for use to impeach and cross-examine witnesses. The material is "relative to the truthfulness, veracity and substance of the [Foreign Law Enforcement Agency ("FLA")] and documents reporting the actual data information provided to HSI and FBI in this matter," (see DN 146 at ¶14) which includes the FLAs' methods, investigative techniques, and the actual tip document. Defense has submitted numerous discovery requests, starting in April, 2022 (See Exhibits A-E, sampling of discovery requests) (previously filed as DN 75-1, DN 75-2, DN 75-3, DN 75-4, & DN 75-5). The Government should have produced this discovery years ago under this Court's original orders (DN 8 and DN 9, 12/13/2021) which were issued pursuant to the Due Process Protections act. "The individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation." *Leka v. Portuondo* 257 F.3d 89 (2nd Cir. 2001) (citation omitted). "Where the government's suppression of evidence amounts to a denial of due process, the prosecutor's good faith or lack of bad faith is irrelevant." *Id.*

1

The Government has professed that it has provided all the requested discovery they have, but Defence identified, in the Motion to Reconsider (DN 169) additional material, responsive to his request, that Defense knows the Government possesses, or should possess, and should have provided years ago. Furthermore, the Government is intentionally avoiding its duty to obtain material discovery that it has access to, and could freely acquire, from its FLA partners in the operation in which the US Government was directly involved.

All requested documents are relative to both charges in the indictment. The Government has put Defense on notice that it plans to introduce an expert to talk about Defendant's alleged use of Tor. Further, Defense has yet received all evidence from the search that occurred years ago. The search, and the allegations that Defendant used Tor and is a "CP Collector" is certainly *Res Gestae* information pertinent to the defense, and cross-examination and impeachment of the Government's experts, and/or other witnesses, in the Government's case in chief.

The local prosecution team, as part of the one US Government, constructively possesses relevant documents that it may not have in its actual possession, because the Government HSI and FBI offices were both directly involved in the joint FLA operation. Also, it has Mutual Legal Assistance Treaties (MLATs) with each partner FLA, specifically designed to be used to acquire items it does not have. The Government has refused to use the MLAT procedure to obtain discovery from the FLAs. This is clearly another tactic, just as the dropping of count one was, to circumvent Defendant's rights under the Fourth amendment (unlawful search and seizure), Fifth amendment (due process rights), and the Sixth amendment (confrontation clause and compulsory process clause) of the US Constitution.

While the Government claims it has provided over "500 pages of discovery," that number is misleading. Of those 500 pages, only 17 relate to the joint operation, and 36 are duplicates of the boilerplate SWA provided at the time of the search (which contained only two sentences - the

substance of the tip - that *might* have provided a factual basis for probable cause, and over 140[1] pages are pictures taken during the search. The Government acknowledges that search warrant pictures and videos are relevant to the current charge, and yet Defense knows of numerous photos taken that were produced. Furthermore, the Prosecutor has advised that he will use irrelevant nude images of the Defendant at trial, but has failed to produce them to the Defense. Some alleged inculpatory images were produced, but the missing corresponding exculpatory images were not. The prosecution is getting to cherry pick and choose any photos it wants as evidence, while withholding the same from Defense. The claim that the Government has provided hundreds of pages of information is just an attempt to give this Court the impression they have done their due diligence in providing discovery.

1. **The US Government Possesses Discovery That Has Not Been Produced**

The prosecution has been obligated under this Court's order, for 890 days as of 5/20/2024 (DN 9 filed 12/13/2024), to provide all of Defendant's requested *Brady* and *Giglio* material, and is obligated to provide Rule 16 material, without any requirement for the Defense to request it. Defense has submitted many discovery requests, dating back to April 22, 2022, in an effort to expedite the process and avoid having to ask the Court to compel this relevant discovery, which is crucial to the Defendant's ability to strategize for, and prepare for trial. (See Exhibits A-E).

Exhibit F, which was made available to the public by one of the partner FLAs involved, and which has been translated from its original Portuguese language, describes in some detail how the US Government had been a necessary participant from the beginning of the tip-identifying Tor deanonymization operation,at issue, and includes exculpatory information that the Prosecution should have produced years ago. Per Exhibit F:

> "The MPF confirmed, **through contacts with the Federal Bureau of Investigation (FBI)**, the existence and importance of this person. ... The deepening of the contact with the maintainer of the services during the infiltration

---

[1] The defense has only been provided with low-res PDF prints of the images, and needs digital, high-res versions, like the Government has retained for its use.

and technical assistance, **legally authorized with the FBI**, led to the identification of the IP address of the target…"The second period of network interceptions was marked by the use of a deanonymization technique (anonymization, inherent to the Deep Web) **with assistance by the FBI**."

Despite the US Government's denial of any involvement in the operation at issue, Exhibit F makes it strikingly clear that this denial is **blatantly untrue.** Clearly, the FBI had been a crucial partner in this joint operation since its inception, many years ago.

Defense has conducted independent research and has identified numerous documents - all involving the **same**, **one, US Governmen**t - that are relevant to the joint operation. Therefore these items are possessed by the prosecution, and should have been produced in this case, with or without the defense continually requesting them. Approximately 1,000 pages of relevant Discovery material was identified as part of a response[2] to a FOIA request regarding the same trans-national operation. That discovery material revealed that the US Government was actually drafting template affidavits for search warrants months prior to receiving tips from the operation for which they allege they had never heard of nor had any involvement in.

The motion to reconsider does not expand upon the motion to compel. Nor is Defendant attempting to require the Government to produce items that it does not have a duty to produce. Instead, the defense is only asking that the Government be required to comply with this Court's initial orders and produce items that the Government has, should have, and/or has a duty to acquire , using available resources, including the MLAT process.

**2. The Prosecution has a Duty to Acquire Additional Discovery for Defendant**

The executive branch's Justice Manual provides guidance, based upon case law, as to the duty of the prosecution team in providing discovery to the defense. [3]

Recognizing that it is sometimes difficult to assess the materiality of evidence

---

[2] HSI FOIA RESPONSE - 2022-ICLI-00049
[3] (*see e.g., Weatherford v. Bursey*, 429 U.S. 545, 559 (1997); *United States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993) *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999), *United States v. Clark,* 385 F.3d 609, 619-20 (6th Cir. 2004) and *United States v. Vaffee*, 380 F.Supp.2d 11, 2-14 (D. Mass. 2005)).

> before trial, prosecutors generally must take a broad view of materiality and err on the side of disclosing exculpatory and impeaching evidence." (JM 9-5.001(B)(1)) (citing *Kyles v. Whitley*, 514 U.S. 419, at 439) (1995). While ordinarily, evidence that would not be admissible at trial need not be disclosed, this policy encourages prosecutors to err on the side of disclosure if admissibility is a close question.

(JM 9-5.001(B)(1))
> It is the obligation of federal prosecutors, in preparing for trial, to seek all exculpatory and impeachment information from all the members of the prosecution team. Members of the prosecution team include federal, state, and local law enforcement officers and other government officials participating in the investigation and prosecution of the criminal case against the defendant.

(JM 9-5.001(B)(2)) (Citing *Kyles*, 514 U.S. at 437)

The prosecution team has not provided everything that the *Government* has, nor has it provided discovery it is obligated to acquire. "The prudent prosecutor will resolve doubtful questions in favor of disclosure." *Kyles,* 514 U.S. at 439 (quoting *U.S. v. Agurs*, 427 U. S., at 108). "This is as it should be." *Kyles,* 514 U.S. at 439. The prudent prosecutor in this case should have opted for full disclosure instead of minimal disclosure. If any questions arise as to what constitutes *Brady* material, an *in-camera* review with the court should be held. See DN 8 ¶(2)(b), and DN 145, ¶(4)(a).

"The individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles,* 514 U.S. at 437. Agents of the HSI offices both in Boston and worldwide (especially in the partner FLA countries), and the FBI, are all "acting on the government's behalf" in this case. (*Kyles,* 514 U.S at 437). Therefore, since they are all part of the US Government, the prosecution has a duty to not only learn of the favorable evidence they possess, but also to acquire and produce it as discovery to the defendant.

"A prosecutor does not represent an entity whose interests include 'winning' at all costs. Instead, his client is society, seeking justice rather than victory." (*US v. Theresius Filippi*, 918 F.2d 244, at 246) (1st Cir. 1990) (citation omitted).

5

Exhibit F describes the joint venture at issue as a mutually beneficial operation in which multiple FLAs were collaborating with each other, with each FLA contributing necessary elements to the operation, over a span of many years. The multiple partner FLAs in this joint venture/operation were obviously "acting on the government's behalf" in this case. Therefore, our Government should be ordered to acquire the "broadly defined" exculpatory evidence from its partner FLAs, either by asking the FLAs to voluntarily turn it over, just as they did with the inculpatory evidence, or by using the MLAT procedure. If the Government refuses to ask, or the FLAs refuse to comply with the requests, then the prosecution team should be barred from using the inculpatory evidence that they acquired from their partner FLAs. Due process guarantees fundamental fairness and justice, and is violated when the prosecution team is allowed to only utilize inculpatory evidence, but avoid obtaining exculpatory evidence from their same partners.

"[T]he Constitution, through the Due Process Clause, [and the Sixth Amendment's Confrontation Clause] 'guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v. Ky.*, 476 U.S. 683, 690 (U.S. 1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485, (U.S. 1984)) (see also *Boggs v. Collins*, 226 F.3d 728, 743 (6th Cir. 2000). In *Blackston v. Rapelje*, 780 F.3d 340 (6th Cir 2015), the Court permitted the prosecution the opportunity to introduce witness statements but limited the Defense's opportunity to present a defense. There, the US Supreme Court found:

> "The deeply ingrained constitutional right to a fair trial cannot countenance allowing such a one-sided, prejudicial presentation of evidence to deprive an individual of liberty. "If any theme at all runs through the protections afforded by the Fifth, Sixth, and Fourteenth Amendments to the [U.S.] Constitution, it is that we will not tolerate heavy-handed governmental attempts to skew the evidence placed before finders of fact in criminal prosecutions. We today refuse to be party to abrogation of such a hallowed principle."

*Blackston v. Rapelje* at 359-360.

In the instant case, the Defendant's opportunity to present a Defense is being drastically limited by its inability to compel the prosecution to produce crucial discovery material. The

Government used inculpatory information from unreliable FLAs, utilizing an unreliable methodology, to obtain a search warrant to go on a primarily unsuccessful pretextual fishing expedition (ie general search) in Defendant's house, resulting in an unrelated charge of possession, based on a handful of ". . .files contained in old, deleted, unused and/or inaccessible space of an old hard drive (and not in an operating computer), last accessed, per forensics, over ten (10) years prior to the investigation. . ." (DN 152 pg. 5).

### 3. Delayed Production of Discovery Violates Defendant's Constitutional Rights

"Under the Due Process Clause…criminal prosecutions must comport with prevailing notions of fundamental fairness." *California v. Trombetta*, 467 U.S. 479, 485 (1984). Safeguarding the defendant's right to present a complete defense, by delivering "exculpatory evidence into the hands of the accused [] protect[s] the innocent from erroneous conviction and ensure[s] the integrity of our criminal justice system." See *Trombetta*, 467 U.S. at 485.

The Sixth Amendment's Compulsory Process Clause confers on defendants **"the right to the government's assistance** in compelling the attendance of favorable witnesses at trial and the right to put before a jury evidence that might influence the determination of guilt." (*Pennsylvania v. Ritchie*, 480 U.S. 39, 56 (1987) (emphasis added)); (See also *Crane v. Kentucky*, 476 U.S. 683, 690 (1986)).

The Government has attempted to circumvent their constitutional obligation to provide discovery by dismissing count one. While the Government has asserted Defendant's discovery requests are moot, the court has yet to have a hearing on the matter, and the Government obligations to disclose all Brady material accrued at least a year before the dismissal. However, it has also notified Defense that it still intends to offer evidence at trial related to count one, but has turned a blind eye to their duty to obtain or provide additional exculpatory evidence from HSI, FBI, or their partner FLAs.

The prosecutor noted that White has been trying for years to obtain the discovery that is

critical to his defense. Since April of 2022, the Defense has repeatedly requested crucial discovery, and the prosecutor has repeatedly ignored those requests. The defendant was arraigned in December of 2021.There is no reason why production of Discovery should have been delayed for over two years now. The defendant has needed this crucial discovery, to exploit for trial preparation, for the entire duration of this case and the prosecutor's failure to produce it is a violation of the defendant's due process rights. These delays may have also inadvertently aided in the destruction or loss of evidence that the defense seeks.

"The more a piece of evidence is valuable and rich with potential leads, the less likely it will be that late disclosure provides the defense with an 'opportunity to use.'" *U.S. v. Bell* 17-cr-20183 DN 307 at 8 (E.D.Mich 20190 (citing *DiSimone v. Phillips*, 461 F.3d 181, 197 (2d Cir. 2006)) (quoting *Leka v. Portuondo*). In this complex criminal matter, much of the evidence requested is valuable and rich with potential leads, and Prosecution's delayed production will undoubtedly hamper the defendant's ability to prepare a vigorous defense.

**4. The Prosecution has a Duty to Use the Available MLAT Procedures**

The Government has been in ongoing communications (using shared access of the Interpol and Europol systems) with its FLA partners for many years, exchanging information pertinent to this case. During this period of time, it has had access to all pertinent communications, and has also gladly accepted alleged inculpatory information, "delivered to them" on a silver platter by their partner FLAs. Information related to the methodology used during the tor deanonymization operation, the affidavit template, and testimony from agents from the FLAs' partners, all contain exculpatory evidence related to the "Truthfulness, Veracity, and Substance of the Tip." Yet the Government claims that it cannot obtain this corresponding exculpatory information from those same FLAs. **This is not true.** The Government has just not tried to obtain it, and indicated that it has no obligation to do so. (August 17, 2022 response letter from Spencer McGinnis, section II). "[P]rocedures and regulations [have been] established to

carry [the prosecutor's] burden and to ensure communication of all relevant information on each case to every lawyer who deals with it." *Kyles v. Whitley,* 514 U.S. at 438 (quoting *Giglio v. U.S.*, 405 U. S. 150, 154 (1972)).

In this case, those procedures include existing MLATs between the US and its FLA partners. See excerpt from US/UK MLAT (Exhibit G). Since "[t]he MLAT does not confer any private rights, only the Government has the ability to make use of these procedures." *U.S. v. McLellan* 1:16-cr-10094-LTS (DN-276 pg. 5) (D.MASS 2018). Defendant is utterly incapable of "present[ing] a complete defense" without the Government's assistance with discovery (*Trombetta*, 467 U.S. at 485), and therefore respectfully requests that this court enter "an order compelling the Government to assist in, and therefore make possible, the production of important, material documents or, alternatively, exclude all evidence relating to the transitions at issue." See *U.S. v. Theresius Filippi*, 918 F.2d 244, 247 (1st Cir. 1990).

In *U.S. v. Mitrovich* 1:18-cr-789 (N.D.Ill. 2020), Defense made a prima facie showing of a joint operation/venture, and therefore the Court granted the Defendant's motion to compel discovery. The instant case is very similar, wherein Defense has made a *prima facia* showing that there was a joint operation, and just like in Mitrovich, there is direct testimony in which the Government states the same. See Exhibit H (trial testimony excerpt, *U.S. v. Dugan*).

> As with his submission that the FBI's cooperation with QPS/DIA potentially calls intoplay the joint venture doctrine, Mitrovich has made "at least a prima facie showing" that malware was used to obtain his IP address. Thompson, 944 F.2d at 1341. It follows that his motion to compel cannot be denied based on the Government's assertion—which rests on second-hand information from QPS/DIA—that malware was not used and therefore that no Fourth Amendment search occurred. See United States v. Budziak, 697 F.3d 1105, 1112-13 (9thCir. 2012) (holding that it was "an abuse of discretion for the district court to deny [the defendant] discovery on the EP2P program," reasoning that "criminal defendants should not have to rely solely on the government's word that further discovery is unnecessary[,] ...especially ... where ... a charge against the defendant is predicated largely on computer software functioning in the manner described by the government, and the government is the only party with access to that software). *U.S. v. Mitrovich* 1:18-cr-789 (DN 73 at 8) (N.D.Ill. 2020).

Likewise, as this case is also predicated largely on computer software functioning in a manner the Government has kept secret, where the Government and their partner FLAs are the only parties with access to it, this Court should order the Government to obtain and reveal it. There is even stronger rationale in this case, as at least in Budziak the Government acknowledged they knew about the software, versus here the Government claims to have no knowledge of the methodology, blindly accepting it to be accurate.

## **CONCLUSION**

The Government has had over two years to provide discovery (a) defense knows it has or should have or (b) does not have, but has a duty to acquire. For discovery the government does not have, it can ask its FLA partners to voluntarily provide it, or can use the MLAT Procedure to acquire it. The continued delay in providing the defense with this crucial discovery is a continuing violation of the defendant's fifth and sixth constitutional amendment rights.

Wherefore, Defense respectfully requests this Honorable Court to compel the Government to seek, acquire, and produce all requested discovery, and foreign witnesses. In the alternative, the defense requests the Court to hold a hearing on this matter.

Respectfully submitted,

*/s/ Wanda McClure Dry*
P.O. Box 2122
Danville, Kentucky 40423
(859) 583-0037

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 20th, 2024, the foregoing motion was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

/s/ Wanda M. Dry,
*Co-Counsel for Defendant*