UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES of AMERICA,

                Plaintiff

vs                                                Crim. No. 3:21-cr-155-DJH
                                                Hon. David J. Hale

JOSHUA WHITE,

                Defendant

## RESPONSE TO MOTION TO SEAL DEFENSE MOTIONS AND EXHIBITS TO COMPLY WITH PROTECTIVE ORDER

      Comes the Defendant, JOSHUA WHITE, through counsel, Wanda M. Dry, and respectfully moves this honorable Court to deny the Government's Motion to Seal.

## BACKGROUND

      In 2016, a **joint venture (aka joint operation or joint investigation)** to deanonymize Tor users began, with the US Government, along with numerous Foreign Law Enforcement Agencies (FLAs), working collaboratively, and using the secure information exchange systems, provided by Interpol and Europol. (See Exhibit 1, Europol Press Release)

      US ICE "had an important part to play" in the joint operation involving "international cooperation," which was "the culmination of a year-long global investigation into the darknet site, Babyheart," and which resulted in the 2017 arrest of the site's administrator, Twinkle. (Exhibit 2, Interpol Press Release).

      "The investigation was considered an international *case study*" . . . involving "an international task force, which involved Interpol, Europol, and the American Homeland Security

1

Investigation, an expert in digital investigation."[1] "The Australian Federal Police told nine.com.au it helped facilitate the **global investigation,** which included **US**, **UK**, French, Italian, Canadian, **Brazilian**, and Portuguese **law enforcement."** **(**Exhibit 3, 9News Article) (emphases added).

The 2017 arrest of "Twinkle" led to the arrest of, and plea bargain with, another administrator of the Babyheart site, in Brazil. Over the next couple of years, our US Government, the U.K. (NCA), Brazil (PF), Germany (BKA), and at least 8 other FLAs continued their joint operation, which eventually culminated in the seizure of servers, in 2019, that hosted the target site, as well as resulted in the deanonymization and arrest of many users who had allegedly visited sites on those servers.

"The [2020 Lobos II] operation was the result of a collective work of police forces from Brazil, the United States, the United Kingdon . . . Germany" . . . and "the [2019] investigations [in Lobos I that were] carried out jointly over the last few years…" (See Exhibit 4, g1 Globo Article).

The Government is requesting to seal the report published by Brazil's National Association of Prosecutors (ANPR), Lobos Resumos (DN-178-1)[2] which has publicly exposed details of the joint operation in which the U.S. FBI, along with the Brazilian Federal Police (PF) and the U.K. National Crime Agency (NCA), performed interference[3] attacks to confirm the physical location of servers that housed websites that were targeted in the joint operation; performed numerous searches and seizures at the physical location; and used traffic analysis to

---

[1] See original Portuguese link https://www.dn.pt/pais/investigacao-a-pedofilos-portugueses-e-case-study-internacional-11736549.html/

[2] https://www.anpr.org.br/media/com_submissoes/files//Resumo-Lobos2021-12-14-16-51-49.pdf

[3] Denial of Service (DDOS) attacks

deanonymize (See EXHIBIT 5[4], Murdoch Declaration) the real IP addresses of Tor users who had allegedly *visited* the targeted sites. After deanonymizing numerous IP addresses, the NCA fulfilled an additional role of laundering the tips that were acquired through this ongoing joint operation, and then supplying them to the law enforcement agencies of numerous other partner countries who were also involved in the joint operation, many of which have existing Mutual Legal Assistance Treaties (MLATs) with the United States. Our government is being disingenuous by denying any knowledge of, or involvement in, the joint venture and the unreliable deanonymization method used therein.

The warrantless invasions of Defendant's privacy and "physical" contact with his computer during the deanonymization operations constituted unlawful searches, which violated the Defendant's Fourth Amendment rights. The ANPR report stated:

> "The MPF confirmed, **through contacts with the Federal Bureau of Investigation (FBI)**, the existence and importance of this person. ... The deepening of the contact with the maintainer of the services during the infiltration and technical assistance, **legally authorized with the FBI**, led to the identification of the IP address of the target…"The second period of network interceptions was marked by the use of a deanonymization technique (anonymization, inherent to the Deep Web) **with assistance by the FBI**."

(ANPR Report DN 178-1) (emphases added).

The Government has had a copy of this exculpatory ANPR report (DN178-1) since at least January 2023. (See *U.S. v. Kiezjo*, DN-188, Sealed Exhibit A, filed 1/10/2023, 4:20-cr-40036, Dist. Mass.). The Government's translation of this report (*U.S. v. Kiezjo*, DN-193, Sealed Exhibit B, added 2/13/2023) confirmed that the FBI had a substantial role in this joint

---

[4] Stephen Murdoch is professor of Security Engineering at University College London and one of the founders of Tor. Murdoch's declaration states that the methodology was Traffic Analysis or a NIT. The U.S. government has disavowed any knowledge of the methodology while simultaneously (and paradoxically) stating that the methodology was not a NIT. When asked, the government has failed to support their non-sequitur statements with any evidence, but has continued to stand by them.

venture and that the "FBI had provided the technical assistance" (*U.S. v. Kiejzo* DN-193, at FN 1) to Brazil, the seizing FLA, in the joint venture. Defendant requested the Government's translation of the report (*U.S. v. Kiezjo*, DN-193, Sealed Exhibit B, added 2/13/2023), on February 28th, 2023, but the Government ignored that request, as well as all other requests for exculpatory evidence.

The Government did not produce the Brazilian Prosecutor's report, (DN-178-1) nor the information revealed in related documents (See, e.g., EXHIBITS 1-4), in discovery.  These documents were all uncovered through the defense's independent research. They expose the U.S.'s involvement in the joint operation and some of the methodology used to deanonymize the server and the users.  And while the Government has repeatedly denied any knowledge of, or involvement in, this joint operation[5] (See EXHIBIT 6, FBI FOIA Response), these documents, and others (e.g. responses to FOIA requests[6]) show that numerous statements made in the search warrant affidavit (SWA) (DN23-1) are untrue.  It is clear that the tip that was crucial to the probable cause determination was generated with the US Government's assistance and was laundered through the "tip FLA" to circumvent the Fourth Amendment's warrant requirement. The allegation in the SWA that the FLA advised[7] the tips were generated during an independent investigation, (DN23-1, at para. 30) is obviously a misrepresentation by the "tip FLA", who has

---

[5] Undersigned counsel submitted a detailed FOIA request in February, 2024, which requested records pertaining to "the FBI's participation in the 2019 Brazilian TOR server deanonymization" in which counsel referenced numerous public documents, including  DN 178-1, and also received a response in February denying any record of the operation: "[W]e conducted a main and reference entity record search of the central records system (CRS)... [and] were unable to identify records subject to the FOIPA that are responsive to your request. Therefore your request is being closed."

[6] The Defense has acquired 71 heavily redacted pages out of 995 pages of responses to FOIA requests that HSI has identified are in the Government's possession and relevant to this operation. Those responses refer to material evidence that should be produced to Defense, such as GoodListener, WoodPecker Ridge, Operation Jarvis, Redacted Information from FOIA response 2022-ICLI-00049, email exchanges between the U.S. and Germany, in June 2019, Documents provided to defendant's in other cases from the same operation, copies of the TEI warrants, copy of all TIPS received, INFO_2018-08 Guard Research Report.pdf, etc. See EXHIBIT 7.

[7] Note the U.S. government knew this statement was erroneous, but failed to correct it.

received much publicity in recent years concerning questionable practices involving the use of TEI warrants, such as those used in this joint operation.[8]

The Defense had requested discovery since April 2022 about the reliability of the methodology, and other "sensitive information about the operation" (the name of the operation, the FLA, the websites, investigative techniques, etc.) (Motions to Seal DN 92, and DN 187), but the Government refused to produce existing documents responsive to those requests. Instead, it moved to dismiss count one in an effort to circumvent their Brady obligation to produce that exculpatory discovery that had been pending for almost a year by that time.

Defendant then filed a Motion to Compel Discovery (DN-75), and attached the discovery requests as exhibits to the motion (DN-75-1 through 75-5). The Government admitted that those requests contained sensitive information directly relevant to this case, and asked the court to seal those exhibits to comply with the protective order (DN 92). It is clear the Government was well aware of the existence of and relevance of the information requested prior to dismissing the count, yet refused to provide it[9]. Further, the request for sealing exemplifies the Government's strong desire to keep this information buried, as they only acknowledged its relevance after it was made public.

Now, the Government is again asking that a publicly available, independently obtained, document (ANPR Report DN 178-1) be sealed because it "reveal[s] sensitive information about the operation (the FLA, the websites, investigative techniques, etc.)"(DN 187).

---

[8] TEI warrants used in this joint venture are 91-TEI-0147-2019 and 91-TEI-0146-2019

[9] "At no point have we or the Supreme Court offered any 'support to the notion that defendants must scavenge for hints of undisclosed Brady material when the prosecution represents that all such material has been disclosed.' Banks, 540 U.S. at 695; see also Strickler, 527 U.S. at 282-89 (rejecting broad due-diligence requirement). To reiterate: Brady requires the State to turn over all material exculpatory and impeachment evidence to the defense. It does not require the State simply to turn over some evidence, on the assumption that defense counsel will find the cookie from a trail of crumbs." (*Barton v. Warden S. Ohio Corr. Facility*, 786 F.3d 450, 468) (6th Cir. 2015)

5

## ARGUMENT

> The Supreme Court [ ] note[s] its "decisions lend no support to the notion that defendants must scavenge for hints of undisclosed Brady material when the prosecution represents that all such material has been disclosed." Banks v. Dretke, 540 U.S. 668, 695, 124 S. Ct. 1256, 157 L. Ed. 2d 1166 (2004). "A rule thus declaring 'prosecutor may hide, defendant must seek,' is not tenable in a system constitutionally bound to accord defendants due process." Id. at 696; cf. Jefferson v. United States, 730 F.3d 537, 546 (6th Cir. 2013) ("[T]he government's position that [the defendant] failed to exercise due diligence because he did not seek information 'the very existence of which the [prosecution] had improperly withheld in violation of Brady. . . is fundamentally at odds with Brady itself.'" (quoting Willis v. Jones, 329 F. App'x 7, 16-17 (6th Cir. 2009))).

*Clark v. Louisville Jefferson County Metro Gov't*, 3:17-cv-00419-GNS-CHL, DN390 (W.D.K.Y 2024); 2024 U.S. Dist. LEXIS 1818 *; 2024 WL 56938)

The ANPR report (DN 178-1) describing the U.S., UK, and Brazilian joint investigation, came about because the Government was hiding, and the Defense was seeking Brady exculpatory information. Details from the report are in direct conflict with those in the Search Warrant Affidavit, and shed a bright light on glaring inconsistencies between the affiant's description of the operation, which was allegedly conveyed to him by the partner, "tip FLA", and the reality of our government's direct, substantial, years-long involvement in the joint investigation, which culminated in the unlawful, warrantless invasion of Defendant's privacy and search for his real IP address, in 2019. That warrantless search led to yet another unlawful search of Defendant's family residence in 2021. Obviously, the Government is withholding much information related to their joint operation, as that information is in stark contrast to their current narrative.

**The ANPR's report is not covered by the protective order**, which only "governs all discovery material in any format (written or electronic), and information contained therein, **that**

**is produced or has already been produced by the government in discovery in the above captioned case.**" (DN 56, Para 1)

During the entire duration of this case, the Government has purposefully withheld all sensitive information about the operation, and continues to deny its involvement in the joint operation, while simultaneously asking for this document to be sealed because it reveals "sensitive information" about its joint operation. The only reason the information in this exhibit is "sensitive" is that it demonstrates that the Government was directly involved in this joint operation and there exists an obvious nexus between the information and the instant case. The Government wants to continue its denial, and to continue withholding exculpatory information related to that joint operation. This information was never produced to the Defendant by the Government in discovery, and is therefore outside the scope of the protective order.

"Any discovery material, or information contained therein… shall be filed under seal…"(DN 56, Para 5) The Prosecution is attempting to expand the protective order by sealing information that was allegedly "derived from" information in Discovery.[10]

"[T]he Sixth Circuit has made it clear that there is a 'strong presumption in favor of openness as to court records.'" *Hansauer v. TrustedSec, LLC*, 2020 U.S. Dist. LEXIS 208 299, at 5 (quoting *Shane Grp., Inc. v. Blue Cross Blue Shield of Mich.*, 825 f. 3d 299, 305 (6th Cir. 2016)).  See also *Richmond Newspapers, Inc. v. Virginia,*" 448 U.S. 555 (1980). Indeed, courts have found that this very type of overreach in protective orders should not stand.

> [T]he Sixth Circuit has expressly cautioned parties against "conflating the standards for protective orders, which concern secrecy within the discovery process, and orders to seal filings, which implicate the right of the public to access court records." Lipman, 974 F.3d at 753. Indeed, in a very recent case, that court denied a motion to seal where "[d]efendants' sole argument for sealing Plaintiffs' brief is

---

[10] The mere fact that the Government used a word or phrase in discovery documents cannot restrict its use when quoting documents made public by persons who are not covered by the protective order in this case.  If this were so, the defense would not be allowed to even mention the Defendant's name without sealing or redaction.

7

>that it contains information **derived from** a deposition that Defendants designated as confidential under a protective order." Id. The court noted that "[u]nder this Court's published precedent, **this is plainly insufficient for a court filing to be sealed**." *Id.* (Emphases added).

*Hansauer v. TrustedSec, LLC*, at 7

The irony here is that if the Government had provided the exculpatory information Defense requested years ago through Discovery, as it should have done, that information could have fallen under the protective order, and would initially have been required to be sealed. Instead, the Government has continually denied knowledge of the joint operation, and has continually denied involvement in the joint operation, but now that the Defense has uncovered this information, the Government has acknowledged its importance and is scrambling to seal it to keep it obscured from the public.

## CONCLUSION

The Defendant is urging this honorable Court not to participate in the Government's continued cover-up, and instead, to allow the truth to be revealed. Not only should this information remain unsealed, but also this Court should order the Government to produce all other information relative to the "Truthfulness, Veracity, and Substance of the Tip" (Defendant's Motion to Compel Evidence, (DN 146)) (see also Defendant's Motion for Reconsideration of Motion to Compel Discovery, DN 169) that was generated by this joint operation, including information about their unreliable methodology.

WHEREFORE, Defendant respectfully requests this Honorable Court to deny the motion to seal. In the alternative, Defendant requests the Court to hold a hearing on this matter.

>>Respectfully submitted,
>>
>>*/s/ Wanda McClure Dry*___
>>Wanda McClure Dry
>>P.O. Box 2122

8

>Danville, Kentucky 40423
>(859) 583-0037
>*Co-counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on May 30th, 2024, the foregoing response was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

>*/s/ Wanda McClure Dry*
>*Co-counsel for Defendant*