UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES of AMERICA,

            Plaintiff

Vs                                                 Crim. No. 3:21-cr-155-DJH
                                               Hon. David J. Hale

JOSHUA WHITE,
           Defendant

## REPLY TO RESPONSE TO MOTION TO SUPPRESS FRUIT (DN 178)

Comes the Defendant, JOSHUA WHITE, through counsel, Wanda M. Dry, and in reply to the Government's response to his Motion to Suppress (DN 178), states as follows:

### BACKGROUND

In 2016, a **joint investigation** to deanonymize Tor users began, with the US Government and Foreign Law Enforcement Agencies (FLAs), working collaboratively, and using Interpol and Europol information exchange systems. (See Exhibit 1, Europol Press Release). US ICE "had an important part to play" in the investigation involving "international cooperation," which was "the culmination of a year-long global investigation into [a] darknet site," and which resulted in the 2017 arrest of the site's administrator, Twinkle. (Exhibit 2, Interpol Press Release).

"The investigation was considered an international *case study*". . . involving "an international task force, which involved Interpol, Europol, and the [US HSI], an expert in digital investigation."[1] "The Australian Federal Police told nine.com.au it helped facilitate the **global investigation,** which included **US**, **UK**. . . **Brazilian**, and **Portuguese** law enforcement.**"** (Exhibit 3, 9News Article) (emphases added). After the 2017 arrest of "Twinkle" the US (HSI /

---

[1]See original:  https://www.dn.pt/pais/investigacao-a-pedofilos-portugueses-e-case-study-internacional-11736549.html/

FBI), the U.K. National Crime Agency (NCA), Brazilian Federal Police (PF), Germany (BKA), and other FLAs continued their joint operation, which culminated in the 2019 seizure of servers and arrest of many users who had allegedly visited sites on those servers. "The [ ] operation was the result of a collective work of police forces from Brazil, the United States, the United Kingdom… Germany"... and "the [2019] investigations [in Lobos I, from which this instant case arose, were] carried out jointly over the last few years…" (Exhibit 4, g1 Globo Article).

The ANPR, Lobos Resumos (DN-178-1)[2] publicly exposed some of the deanonymization methodology used in the joint operation in which the U.S. FBI, the PF, and NCA, performed interference attacks to confirm the physical location of the target servers; performed searches and seizures at the physical location; and used an unreliable traffic analysis (See Exhibit 5, Murdoch Declaration) to deanonymize the real IP addresses of Tor users who had allegedly *visited* the targeted sites, after which the NCA fulfilled an additional role of laundering tips and giving them to the partner FLAs, many of which have existing Mutual Legal Assistance Treaties (MLATs) with the US. The Government has denied any knowledge of, or involvement in, this joint operation (See exhibit 6, FOIA Response). However, documents from responses to FOIA requests[3] show that the US had been coordinating this joint operation with the FLA partners for years – long before receiving any lucky tips. The warrantless invasions of Defendant's privacy and "physical" contact with his computer during the deanonymization operations constituted at least unlawful searches, which violated the Defendant's Fourth Amendment rights. The ANPR report stated:

> "The MPF confirmed, **through contacts with the Federal Bureau of**

---

[2] https://www.anpr.org.br/media/com_submissoes/files//Resumo-Lobos2021-12-14-16-51-49.pdf (Link is now broken)

[3] Those responses, which date back to at least 2018, refer to WoodPecker Ridge and Operation Jarvis, and contain redacted email exchanges regarding the language of the affidavit template, [Tor entry note] "guard research" and the methodology used in the "GoodListener" project. This was all prior to the receipt of the tips in this case. (see Exhibit 7, Emails).

> **Investigation (FBI)**, the existence and importance of this person . . . The deepening of the contact with the maintainer of the services during the infiltration and technical assistance, **legally authorized with the FBI**, led to the identification of the IP address of the target…"The second period of network interceptions was marked by the use of a deanonymization technique (anonymization, inherent to the Deep Web) **with assistance by the FBI**."

(ANPR Report DN 178-1) (emphases added). The Government's translation (from Portuguese) of this report (*U.S. v. Kiezjo*, DN-193, Sealed Exhibit B) confirmed that the FBI played a substantial role and that the "FBI had provided the technical assistance" (*U.S. v. Kiejzo* DN-193, at FN 1) to Brazil, the seizing FLA, in the joint venture.

It is clear that the tip, which was crucial to the probable cause determination, was generated with the US Government's assistance and was laundered through the tip FLA to circumvent the Fourth Amendment's warrant requirement. The allegation in the SWA that the FLA advised the tips were generated during an independent investigation, (DN23-1, at para. 30) is obviously a misrepresentation by the tip FLA, who has received much publicity[4] in recent years concerning questionable warrant practices[5], including the use of TEI [Targeted Equipment Interference] warrants, such as those used in this joint operation.[6]

## ARGUMENT

A district court in the sixth circuit has recently reviewed the "international silver platter doctrine" (US v. Getto, 729 F.3d 221, at 227 (2nd Cir. Nov. 2013)) (citing US v. Lee, 723 F.3d 134 (2d Cir. June 7, 2013); 2013 U.S. App. LEXIS 11496; 2013 WL 2450533, at *4 ), and noted

---

[4] See Exhibits 8, 9, 10.

[5] See Exhibit 11 - "NCA slammed as 'ignorant' and 'ill-informed' by High Court judge after agency used unlawful search warrants"

[6] TEI warrants used in this joint venture are 91-TEI-0147-2019 and 91-TEI-0146-2019

that there are "two circumstances where evidence obtained in a foreign jurisdiction may be excluded." *Id.* First, that court noted that a Fifth Amendment (Due Process), rather than a Fourth Amendment, right is implicated "where the conduct of foreign officials in acquiring the evidence is so extreme that it shocks the judicial conscience." Next, the Getto court identified two instances by which "cooperation with foreign law enforcement officials may implicate constitutional restrictions" and thereby violate the Fourth Amendment, *Id.* Although either instance alone would mandate suppression of evidence, the joint investigation in this case violates the Fourth Amendment under both instances. First, the conduct of FLA "officials rendered them agents, or virtual agents, of United States law enforcement officials," *Id.* Second, the cooperation between the US and FLA agencies "was designed to evade constitutional requirements applicable to American officials," *Id.*

**The 2019 joint venture in Brazil was deliberately orchestrated to circumvent Fourth Amendment restrictions on warrantless searches and seizures.**

> Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law. . .To declare that, in the administration of the criminal law, the end justifies the means -- to declare that the Government may commit crimes in order to secure the conviction of a private criminal -- would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face.

*Olmstead v. United States*, 277 U.S. 438, 485 (1928)

To circumvent the warrant requirement, in the 2019 Tor deanonymization project in Brazil, the US attempted to compartmentalize various stages of the investigation. This strategy was employed so it could assert that, while it shared information and possibly engaged in other activities that ostensibly did not necessitate a warrant, it did not directly conduct the search. The US temporarily stepped to the sidelines and watched while the NCA collected dirty tips, laundered them, and then returned them to the US. This allowed the US to claim, with a semblance of credibility, that it did not execute the actual search. However, the tip-gathering was merely a minor component of a larger operation that

4

required substantial equipment, financial resources, and the active involvement of US, UK, and Brazilian law enforcement agencies.

In *Lustig v. United States*, 338 U.S. 74, 69 (1949), a federal agent joined a state search in progress, and "even though he acted . . . without intent to avoid the limitations of the fourth amendment, and was not the moving force behind the search," the court found that "the search was still to be judged by federal standards in determining the admissibility of evidence in a federal prosecution[.]" *US v. Searp*, 586 F.2d 1117, 1120 (6th Cir. 1978) (citing *Lustig v. United States*).

> The decisive factor . . . is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means. It is immaterial whether a federal agent originated the idea or joined in it while the search was in progress. So long as he was in it before the object of the search was completely accomplished, he must be deemed to have participated in it. . . . Evidence secured through such federal participation is inadmissible.

*US v. Searp*, 586 F.2d 1117, 1120 (6th Cir. 1978) (quoting *Lustig* at 69). The cooperation between the US and FLAs "was designed to evade constitutional requirements applicable to American officials" (*Getto* at 227) (citing *Lee* at *4) and thus implicates the constitutional restrictions, rendering the 2019 warrantless search in Brazil a violation of the 4th Amendment.

**The FLA's conduct in the 2019 warrantless searches in Brazil rendered them US agents.**

In US v. Price, the court explained that, "Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law. . . To act "under color" of law does not require that the accused be an officer of the state. It is enough that he is a willful participant in joint activity with the state or its agents." (*US v. Price*, 383 U.S. 787, 794 (1966)).

Here, agents from the partner FLAs, working under color of law, operated as US agents. Evidence suggests that the US role was to provide technical and investigative expertise, equipment, TOR network nodes, and significant funding for the operation to ensure the partner

FLAs could fulfill their roles[7]. FOIA requests have revealed that the US was drafting affidavits, and supplying data to FLAs, in anticipation of receiving tips from the NCA to complete the boilerplate affidavits (See Exhibit 7). It would have been **impossible** for the U.S. Government to have written affidavits in advance of receiving those serendipitous tips without being directly involved in and fully aware of the operation beforehand.

HSI Agent Gregory Squire, who was instrumental in drafting the US search warrant affidavit (SWA) template, was so intimately involved in the joint operation that the leader of the FLA (NCA) awarded him a commendation (See Exhibit 12, Linkedin page). HSI agents earn commendations for active, pivotal roles, not for passively receiving information. The Government's attempt to downplay this as mere "information sharing" is continued gaslighting,[8] and an affront to this Court and the public. The Government paradoxically refutes the Defense's reliable information about an operation it claims not to know about.

**The FLAs' conduct shocks the conscience and violates the Fifth Amendment.**

The "shocks the judicial conscience standard" is meant to protect against the types of egregious conduct of the foreign officials in this case because it "violates fundamental international norms of decency." *US v. Emmanuel*, 565 F.3d 1324, 1331 (11th Cir. 2009) (citation omitted). The US failed to acquire a warrant, i.e. ask for permission, to conduct these unlawful searches and seizures in Brazil, and this Court should not condone its unlawful behavior by granting them forgiveness for its willful violations of the US Constitution.[9]

---

[7] Defense is "'entitled to evidence that may demonstrate cooperation between the United States and [FLA] governments sufficient to reveal an agency relationship so that they can, if appropriate, raise constitutional challenges.'" *Abu Ali v. Ashcroft*, 350 F. Supp. 2d 28 (2004) (quoting *Karake* 281 F. Supp. 2d at 309).

[8] Gaslighting: The practice of deceiving people through the repetition of a constructed false narrative (dictionary.com)

[9] Much like in the EncroCrypt operation, it was clear the FLA sought the warrant it wanted, rather than the one that was appropriate and lawful– relying on the prospect of forgiveness, as permission would not be granted. (See Exhibit 10)

Not only was this a warrantless search by the United States, but also the tip FLA (the NCA) used a TEI warrant, which was an invalid warrant for a traffic analysis, effectively rendering this a warrantless search under the UK's own laws[10]. While the search warrant affidavit noted that the tip came from a "reliable" informant with a rule of law, it is clear the informant tip FLA demonstrates much less respect for their legal standards than the United States Government should uphold for our own (see also Exhibit 11).

> [T]he NCA had decided that it wanted a Targeted Equipment Interference (TEI) warrant - the only warrant that would allow messages…to be used as evidence in court… [T]he correct warrant for the EncroChat operation, would have been a Targeted Intercept (TI) warrant which would not allow messages…to be used as evidence". . ."The determination by the [NCA] to see it as [TEI] not [TI] led to **willful blindness** by officers or at the very least a wholly inadequate analysis of the information they need to put before judicial commissioner.

(See Exhibit 9)

The tip FLA intentionally made misrepresentations to HSI Boston, who deliberately included them in its boilerplate SWA templates, and passed them along to field officers, such as Agent Koski, who then submitted them to the courts without questioning them. Finally, the tip FLA has refused to provide any information[11] about its error-prone traffic analysis, and has refused to agree to testify in this case (DN 62). The FLAs are co-conspirators in a scheme designed to cover-up unlawful activity by our Government and violate the constitutional rights of US Citizens. The FLA's participation in this prolonged, clandestine operation, designed to circumvent U.S. constitutional requirements, and involving warrantless searches and seizures, unreliable "secret" methodologies, and international concealment of information, would be

---

[10] "The NCA admits "agents tasked with applying for its warrants… were not properly trained and routinely submitted the paperwork without seeking any legal advice… agents were found to have failed to disclose relevant information to courts …when asking for permission to search properties, seize evidence, and install bugs – rendering the authorisation they received unlawful." www.buzzfeed.com/tomwarren/the-national-crime-agency-is-in-chaos-over-unlawful-raids

[11] It is unknown if the FLA would provide information via MLAT procedures, as the Government has refused to use them.

shocking to the public, and, likewise, should be shocking to the judicial conscience.

**The best evidence of a joint venture is both reliable and authoritative.**

While the Government states that the defense's "best evidence" is "flimsy and unreliable," (DN 190, pg 6) that contradicts the Government's pending request to seal that same evidence because it "reveal[s] sensitive information about the operation (the FLA, the websites, investigative techniques, etc.)" (DN 187). Defendant has identified many crucial indicators to reliability in its response (DN 199) to said motion (DN 187). Further, the Government's own translation of this report (*U.S. v. Kiezjo*, DN-193, Sealed Exhibit B) confirmed that the FBI had a substantial role in this joint venture and that the "FBI had provided the technical assistance" (*U.S. v. Kiejzo* DN-193, at FN 1) to Brazil, the seizing FLA, in the joint venture.

**The error-prone method used to produce FLA's tips would not survive scientific scrutiny**

When "the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion, the surveillance is a 'search' and is presumptively unreasonable without a warrant." (*Kyllo v. US*, 533 US 27, 40) (2001). The error-prone traffic analysis[12] used here resulted in unreasonable, warrantless searches. The logical inference is that extreme measures were taken in this operation, as it took 12 countries, working jointly for years, using a "secret" traffic analysis, to deanonymize the hidden service and users who allegedly accessed a site on the hosting server.

The Government denies knowledge of the operation's methodology, while simultaneously making unsupported claims that it was reliable[13]. **Both assertions cannot be true.** In the SWA, the Government parroted the tip FLA's statement that no computer in the US

---

[12] Dr. Murdoch states either a NIT or an error-prone traffic analysis was used. (See Exhibit 6, at ¶ 22- 32).

[13] Based on review of related cases, defendant posits that this traffic analysis would not survive a Daubert challege.

was accessed during the deanonymization. This is false; not because the Defense says it to be so, but because this is incongruent with how this technology operates.[14] Each time a user accesses any Tor site, the user and the site must establish a channel between them by going through a central server and a rendezvous node, which must necessarily "access" the user's computer to negotiate the series of handshakes and authentications to accomplish that. To link the real IP address of the user to the hidden site, the traffic analysis must identify traffic to the hidden service at the rendezvous node and correlate it to the user's real IP address at a point between the user's computer and the guard node. Without the handshake at the rendezvous node, this would not be possible.

**The Good Faith Argument is Irrelevant to this Motion**

The Government spills a lot of ink using inflammatory misstatements from the boilerplate SWA, consuming over half of its response on irrelevant issues to distract the Court. The good faith doctrine does not apply to the warrantless 2019 search in Brazil. And no good faith exception would apply to the 2021 search, (see four tests outlined in *US v. Lewis*, 81 F.4th 640 (6th Cir. 2023)) which stemmed from the same operation as the instant case. The SWA lacked all indica of probable cause - it was a barebones affidavit, which "state[d] suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge[.]" *(US v. Lewis)* (citation omitted).

HSI Boston headquarters deliberately crafted a deceptive SWA template and distributed it to each local office, along with every FLA tip. The resulting affidavits were filled with rambling boilerplate recitations designed to feign compliance with legal standards, while systematically thwarting any potential defenses. In order to justify a broad general search, the

---

[14]See, https://spec.torproject.org/tor-spec/negotiating-channels.html (last visited 6/2/24)

affidavit was filled with general statements with no nexus to the Defendant. For example, the assertion that "child porn collectors collect child porn" is as irrelevant as saying "dog owners own dogs." Both statements, while true, have no nexus to the defendant. In the 29-page affidavit, the two-sentence "tip" was the **ONLY** non-boilerplate allegation with any nexus to this specific Defendant.

## CONCLUSION

"Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence." *Mapp v. Ohio*, 367 U.S. 643, 659 (1961). The warrantless searches conducted as part of the, years-long joint operation, violate Defendant's Constitutional rights. The resulting tip, search warrant, and all evidence seized during the 2021 search, are fruits of this poisonous tree (i.e., the unlawful, warrantless searches that occurred in Brazil in 2019, as part of a joint venture (See DN-178-1)). Thus the search warrant must be quashed and all evidence must be suppressed. In the alternative, the Defense respectfully requests a hearing on this matter.

Respectfully submitted,
*/s/ Wanda McClure Dry*
P.O. Box 2122
Danville, Kentucky 40423
*Co-counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on June 3rd, 2024, the foregoing reply was electronically filed with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all attorneys of record.

*/s/ Wanda McClure Dry*
*Co-counsel for Defendant*

10