UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,                                          Plaintiff,

v.                                              Criminal Action No. 3:21-cr-155-DJH

JOSHUA WHITE,                                                      Defendant.

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on several pretrial motions.  Defendant Joshua White has filed two motions to suppress (D.N. 171; D.N. 178); a motion for a *Franks* hearing (D.N. 172); and a supplemental motion to suppress.  (D.N. 173)  The United States opposes all of White's motions.  (D.N. 189; D.N. 190; D.N. 191; D.N. 192)  The government moves to seal some of White's filings (D.N. 187), which White opposes.  (D.N. 199)  Additionally, each party moves to strike documents filed in error.  (D.N. 181; D.N. 188)  For the reasons set out below, the Court will deny White's suppression motions and motion for a *Franks* hearing, grant the government's motion to seal, and grant both parties' motions to strike.

## I.      BACKGROUND

On February 8, 2021, Homeland Security Investigations (HSI) Special Agent John C. Koski, Jr. submitted an affidavit in support of a warrant to search White's residence, which a U.S. Magistrate Judge granted.  (D.N. 23-1)  In his warrant affidavit, Koski set out the following facts.

"A user of the Internet account at" White's residence "ha[d] been linked to an online community of individuals who regularly send and receive child pornography *via*" the "Target

1

Website."[1]  (*Id.*, PageID.81)  The Target Website operated on Tor, which is a computer network designed to facilitate anonymous communication over the Internet.  (*Id.*, PageID.82)  Tor masks its users' IP addresses so that "traditional IP address-based identification techniques are not effective."  (*Id.*)  To access the Tor network, a user must install Tor software.  (*Id.*)  Tor can be used to access websites on the open Internet or websites that operate exclusively on Tor, which are known as "hidden" or "onion" services.  (*Id.*, PageID.83)

Unlike websites on the open Internet, websites on Tor have URLs consisting of 16 or 56 algorithmically generated characters ending in ".onion," which a user must know exactly to access the website.  (*Id.*, PageID.82, 84)  This makes hidden services like the Target Website "much more difficult, if not impossible" to find accidentally or through a traditional search engine.  (*Id.*, PageID.88, 91)  Users interested in accessing a particular hidden service therefore usually find the URL through either an individual who knows the URL or another hidden service.  (*Id.*, PageID.88, 91–92)  Some hidden services operate as "directory sites" by maintaining a list of links to other hidden services.  (*Id.*)  The Target Website "was listed on one or more such directory sites advertising hidden services dedicated to the sexual exploitation of children."  (*Id.*, PageID.88–89)

The Target Website "was an active online chat site whose primary purpose was to share and distribute child pornography" that could only be accessed if a Tor user knew its URL and registered for an account.  (*Id.*, PageID.84)  The registration page stated: "No hurtcore, No gore, No zoo, No death, No toddlers"[2] and "Post links with good photos and videos."  (*Id.*)  Registration was free and required the user to create a "nickname" and a password.  (*Id.*, PageID.85)  Once a

---

[1] The affidavit does not reveal the website's true name to prevent active users from learning of the ongoing investigation.  (D.N. 23-1, PageID.80 n.1)

[2] Koski asserted that these terms refer to specific genres of child pornography.  (D.N. 23-1, PageID.85)

user registered and logged onto the Target Website, the user could view the homepage, which "stated that the site was intended for users to 'post links with good photos and videos' depicting '[o]nly GIRLS 5 to 13 years [old].'"  (*Id.*, PageID.84, 91)  The Target Website contained chat rooms where users could communicate with one another.  (*Id.*, PageID.84)  It also advertised links to four other hidden services, which included descriptions such as "Forum for boy-and-girlovers" and "Girls pedo portal."  (*Id.*, PageID.87–88)  Registered users could share links to their own digital images.  (*Id.*, PageID.88)  Law enforcement officers accessed and downloaded child pornography images via these links.  (*Id.*, PageID.88, 90)

A foreign law enforcement agency (FLA) investigating the Target Website notified the Federal Bureau of Investigation (FBI) that a United States-based IP address "was used to access online child sexual abuse and exploitation material *via*" the Target Website.  (*Id.*, PageID.89 (internal quotation marks omitted))  The FLA had "a history of providing reliable, accurate information."  (*Id.*, PageID.90)  The FLA advised the United States that it obtained the IP address "through [an] independent investigation that was lawfully authorized in the FLA's country pursuant to its national laws."  (*Id.*)  The FLA also advised the United States that it "had not interfered with, accessed, searched, or seized any data from any computer in the United States" to obtain the IP address.  (*Id.*, PageID.90–91)  United States law enforcement did not participate in the FLA's investigation.  (*Id.*, PageID.91)  The FBI ultimately identified White as the account holder of the IP address, and Koski submitted his warrant affidavit, asserting that there was probable cause to believe that White had accessed the Target Website with the intent to view child pornography.  (*Id.*, PageID.93)  The affidavit did not state how long White allegedly accessed the Target Website.  (*See* D.N. 23-1)

3

On February 8, 2021, a U.S. Magistrate Judge issued a warrant to search White's residence and seize any computer systems and equipment found on the premises.  (*Id.*, PageID.93, 104; D.N. 189-1)  The FBI executed the search on February 17, 2021.  (D.N. 171, PageID.719)  On December 7, 2021, White was charged with accessing with intent to view child pornography and possession of child pornography.  (D.N. 1)  On the government's motion, the accessing charge was later dismissed.  (D.N. 69)

White has filed two suppression motions, as well as a supplemental suppression motion and a motion for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978).  (D.N. 171; D.N. 172; D.N. 173; D.N. 178)  The government moves to seal one of White's suppression motions. (D.N. 187)  The Court will analyze each motion below.

## II.   ANALYSIS

### A.    Motion to Suppress Evidence Exceeding the Scope of the Warrant

First, White seeks "to suppress new evidence searched and seized after that authorized by the Search Warrant."  (D.N. 171, PageID.719)  The parties largely agree on the facts underlying the motion, which are set out in the briefs.  During the search of White's residence, "HSI agents seized approximately 29 electronic storage devices and made identical forensic copies of those devices."  (D.N. 189, PageID.849)  The government's "initial forensic review of those devices revealed evidence of child pornography on at least one device."  (*Id.*)  "Several other devices were partially reviewed at that time due to encryption software on those devices making it difficult for law enforcement officers to access the content of the devices."  (*Id.*)

On April 30, 2021, White filed a U.S. Customs Seized Asset Claim form seeking the return of the devices seized from his home.  (D.N. 171, PageID.720; D.N. 184)  HSI received White's claim on May 17, 2021; it returned 17 of the 25 seized devices on June 14, 2021, and four more

4

devices on February 1, 2022.  (D.N. 189, PageID.849; D.N. 171, PageID.724)  The government retained four devices—three hard drives and a laptop—that "either contained evidence of child pornography or contained evidence indicative of accessing child pornography."  (D.N. 191, PageID.874–75)  The government continued searching the devices it retained, as well as the digital copies that it had made of the devices returned to White.  (*Id.*, PageID.850–51)  "After an upgrade in the technology of forensic tools," HSI was able to decrypt some of the devices and found additional evidence indicative of child pornography.  (*Id.*)  HSI was not able to decrypt one of the devices until October 2023.  (*Id.*, PageID.851)

In his motion to suppress, White argues that the search warrant did not authorize HSI to conduct additional searches on the devices, including the digital copies, seized from his home.  (D.N. 171)  Citing Federal Rule of Criminal Procedure 41 and the Fourth Amendment, White requests that the Court "suppress from trial all evidence searched and seized beyond a reasonable date as authorized by the Search Warrant or alternatively . . . grant a hearing."  (*Id.*, PageID.722)  In response, the United States contends that its subsequent searches of the devices did not exceed the scope of the warrant and were permissible under Federal Rule of Criminal Procedure 41(e)(2)(B).  (D.N. 189)

### 1.    Subsequent Searches

The Fourth Amendment prohibits unreasonable searches and seizures.  U.S. Const. amend. IV.  "Generally, a search warrant authorizes a single search of the premises that is the subject of the warrant."  *United States v. Whipple*, No. 3:20-CR-31-KAC-HBG, 2021 WL 9456475, at *15 (E.D. Tenn. Dec. 1, 2021), *report and recommendation adopted in part*, No. 3:20-CR-31-KAC-JEM, 2022 WL 3684593 (E.D. Tenn. Aug. 25, 2022), *aff'd*, 92 F.4th 605 (6th Cir. 2024) (citing *United States v. Keszthelyi*, 308 F.3d 557, 568–69 (6th Cir. 2002)).  But the Sixth Circuit "has

recognized that the repeated search of an electronic device properly seized as evidence in a case does not run afoul of this rule, which was created in the context of searches of residences." *Id.* (citing *United States v. Castro*, 881 F.3d 961, 967–68 (6th Cir. 2018) ("A repeated search of an electronic device removed from the home and permissibly secured by the police as evidence of a crime differs in degree and kind.")). "Officers may conduct a more detailed search of an electronic device after it was properly seized so long as the later search does not exceed the probable cause articulated in the original warrant and the device remained secured." *Castro*, 881 F.3d at 966 (citing *United States v. Evers*, 669 F.3d 645, 650–52 (6th Cir. 2012)). "That is true even if the officers conducted an initial search soon after the device's seizure but waited months or years to conduct a more intensive search." *Id.* (citing *United States v. Johnston*, 789 F.3d 934, 941–43 (9th Cir. 2015)).

Similarly, "[t]he Federal Rules of Criminal Procedure provide with regard to a search warrant for electronically stored information that law enforcement are authorized to perform 'a later review of the media or information consistent with the warrant.'" *United States v. Glatz*, No. 3:19-CR-218-TAV-DCP, 2023 WL 4503981, at *34 (E.D. Tenn. May 1, 2023), *report and recommendation adopted*, No. 319CR218TAVDCP1, 2023 WL 4351503 (E.D. Tenn. July 5, 2023) (quoting Fed. R. Crim. P. 41(e)(2)(B)). Rule 41(e)(2)(A) provides that a warrant must be executed within 14 days, and under subsection (f)(1)(A), "[t]he officer executing the warrant must enter on it the exact date and time it was executed." But Rule 41(e)(2)(B) explains that "[t]he time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or review." Fed. R. Crim. P. 41(e)(2)(B); *see also United States v. Huart*, 735 F.3d 972, 974 n.2 (7th Cir. 2013) ("We do note that, under Federal Rule of Criminal Procedure 41(e)(2)(B), a warrant for electronically stored

information is executed when the information is seized or copied . . . . Law enforcement is permitted to decode or otherwise analyze data on a seized device at a later time."); *United States v. Hernandez*, 183 F. Supp. 2d 468, 480 (D.P.R. 2002) ("Neither Fed. R. Crim. P. 41 nor the Fourth Amendment provides for a specific time limit in which a computer may undergo a government forensic examination after it has been seized pursuant to a search warrant.").

The 2009 Advisory Committee's Note "to Rule 41 explain[s] the need for such a procedure, noting that '[c]omputers and other electronic storage media commonly contain such large amounts of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location.'" *United States v. Gaither*, No. CR 17-15-DLB-CJS, 2018 WL 1867163, at *12 (E.D. Ky. Jan. 17, 2018), *report and recommendation adopted*, No. CR 17-15-DLB-CJS, 2018 WL 1033457 (E.D. Ky. Feb. 22, 2018) (alteration in original) (quoting Fed. R. Crim. P. 41(e) advisory committee's note to 2009 amendment).  The Advisory Committee further highlights that "[a] substantial amount of time can be involved in the forensic imaging and review of [electronic] information.  This is due to the sheer size of the storage capacity of media, difficulties created by encryption and booby traps, and the workload of the computer labs."  Fed. R. Crim. P. 41(e)(2) advisory committee's note to 2009 amendment. Accordingly, Rule 41(e)(2) "acknowledges the need for a two-step process: officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant."  *Id.*

Here, HSI's later review of the seized devices and their digital copies was constitutionally permissible and authorized by the express language of Rule 41(e)(2)(B).  The record indicates that HSI's search efforts were prolonged by the substantial encryption on some of the devices— encryption so strong that the government did not initially have the technology to break it.  (*See*

D.N. 194, PageID.874–75)  The delay therefore was not intentional "but rather the result of software complications that arose attendant to forensic analysis of electronic storage media." *Gaither*, 2018 WL 1867163, at *13.  In sum, HSI searched the seized devices over a "time period [that] was reasonable under the circumstances."  *Id.*  Additionally, HSI did not exceed the scope of the warrant, as explained below.

### 2.    Scope of the Warrant

White filed a supplement to his first motion to suppress, noting that Attachment B to the warrant affidavit "details items to be seized as . . . 'evidence indicating the computer users' knowledge and/or intent *as it relates to the crime(s) under investigation*.'"  (D.N. 173, PageID.748 (quoting D.N. 189-1, PageID.859))  According to White, "Attachment 'B' specifically authorizes *only* the search and seizure of any 'computers or storage media used as the means of committing a criminal offense, namely . . . an 'access with intent to view' on or about April 11, 2019."  (*Id.*, PageID.754)  White contends that HSI searched "old storage devices and files dating back in time to 2009 and 2010" (D.N. 202, PageID.1032) but that the warrant affidavit "provided no facts nor probable cause of receipt or possession of child erotica in the years preceding 2019."  (D.N. 173, PageID.754)  The United States argues that HSI did not exceed the scope of the warrant because HSI's search "was confined to areas where there were likely to be illicit images, evidence of searches for child pornography, evidence of data wiping and encryption tools, evidence of user attribution, evidence of access to TOR, evidence of malicious software, and evidence of how and when the devices were used."  (D.N. 189, PageID.854)

Absent exigent circumstances, the Fourth Amendment requires law-enforcement officers to obtain a warrant based on probable cause "from a neutral and disinterested magistrate before embarking upon a search."  *Franks*, 438 U.S. at 164.  "A police officer has probable cause to

conduct a search when the facts available to [the officer] would warrant a person of reasonable caution in the belief that contraband or evidence of a crime is present." *Florida v. Harris*, 568 U.S. 237, 243 (2013) (alterations and internal quotation marks omitted). Probable cause "requires only a probability or substantial chance of criminal activity" and "depends on the totality of the circumstances." *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)) (internal quotation marks omitted).

"[T]he relevant inquiry" in a probable-cause determination "is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of noncriminal acts." *Id.* at 586 (quoting *Wesby*, 583 U.S. at 57) (internal quotation marks omitted). "Therefore, '[p]robable cause is not a high bar.'" *Id.* at 585 (alteration in original) (quoting *Wesby*, 583 U.S. at 57). Additionally, the issuing judge's determination "should be paid great deference," *Illinois v. Gates*, 462 U.S. 213, 236 (1983), and "be left undisturbed if there was a 'substantial basis' for the probable-cause finding." *Tagg*, 886 F.3d at 586 (quoting *Gates*, 462 U.S. at 238–39).

"A search pursuant to a valid warrant may devolve into an invalid general search if the officers 'flagrant[ly] disregard . . . the limitations of [the] search warrant.'" *United States v. Garcia*, 496 F.3d 495, 507 (6th Cir. 2007) (alterations in original) (quoting *United States v. Lambert*, 771 F.2d 83, 93 (6th Cir. 1985)). The Sixth Circuit "will find that an officer flagrantly disregards the limitations of a warrant only where he 'exceed[s] the scope of the warrant *in the places searched*' (rather than the items seized)." *Id.* (alterations in original) (quoting *Waller v. Georgia*, 467 U.S. 39, 43 n.3 (1984)). "The test for determining if the officers engaged in an impermissible general search is whether their search *unreasonably* exceeded the scope of the warrant." *Id.* (citing *Brindley v. Best*, 192 F.3d 525, 531 (6th Cir. 1999)). In the context of

computer searches, "[w]hile officers must be clear as to what it is they are seeking on the computer and conduct the search in a way that avoids searching files of types not identified in the warrant, . . . a computer search may be as extensive as reasonably required to locate the items described in the warrant based on probable cause." *United States v. Richards*, 659 F.3d 527, 538 (6th Cir. 2011) (internal quotation marks omitted) (quoting *United States v. Burgess*, 576 F.3d 1078, 1092 (10th Cir. 2009)).

Here, HSI did not exceed the scope of the warrant by searching and seizing "old hard drives and storage devices containing deleted files long predating April 2019." (D.N. 173, PageID.755) In his warrant affidavit, Koski explained that individuals who access with intent to view child pornography "almost always possess and maintain child pornographic material in the privacy and security of their home" and "typically retain those materials and child erotica *for many years*." (D.N. 23-1, PageID.96 (emphasis added)) Koski further stated that "such individuals often maintain their child pornography images in a digital or electronic format . . . such as a computer" and that "[s]ome of these individuals have also been found to download, view, and then delete child pornography on their computers or digital devices on a cyclical and repetitive basis." (*Id.*) Lastly, Koski noted that "evidence of such activity, including *deleted child pornography*, often can be located on these individuals' computers and digital devices through the use of forensic tools." (*Id.*, PageID.97 (emphasis added)) Thus, contrary to White's assertion, the warrant affidavit *did* "provide facts [and] probable cause of the receipt or possession of child erotica in the years preceding 2019." (D.N. 173, PageID.754)

Moreover, Attachment B to the search warrant authorized the seizure of "evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense,

10

namely violation of 18 U.S.C. § 2252A(a)(5)(B)." (D.N. 189-1, PageID.858)   Section 2252A(a)(5)(B) criminalizes accessing with intent to view child pornography as well as the possession of child pornography: it applies to any person who "knowingly possesses, or knowingly accesses with intent to view, any . . . material that contains an image of child pornography." § § 2252A(a)(5)(B)   Accordingly, Attachment B provided an extensive list of "items to be seized," including "[c]omputers or storage media used as a means to commit [the violation of § 2252A(a)(5)(B)], "child pornography," "visual depictions of minors engaging in sexually explicit conduct," and "child erotica." (D.N. 189-1, PageID.858–59 (emphasis removed))   Thus, as the government observes, "[t]he warrant documents specifically authorized the search of White's seized devices for items related to his [alleged] violation of child pornography laws." (D.N. 189, PageID.849)   HSI's search of the devices seized from White's home was therefore within the bounds of the warrant and did not amount to an impermissible "general search." *Garcia*, 496 F.3d at 507.   In sum, suppression of the evidence gathered from HSI's review of the devices seized from White's home, including the digital copies of those devices, is not justified. *See Castro*, 881 F.3d at 966.

### B.      Motion for a *Franks* Hearing

In his next motion, White requests a hearing "pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) and the Fourth Amendment, based on materially false statements and omissions contained in the Search Warrant Affidavit." (D.N. 172, PageID.731)   White asserts that the "[a]ffiant knew or should have known[:] (1) images shown to the magistrate judge were not on Target Website[;] (2) White did not access Target Website on the date and time indicated[;] (3) White did not possess [the] requisite log-in name, password []or credentials[;] and (4) no duration [of time spent on Target Website] infers no access or possession [of child pornography]."

11

(*Id.*, PageID.734)   The government argues in response that "White's motion . . . is based on assumed and disputed facts not in the record" and that White has not made the showing necessary for a *Franks* hearing.  (D.N. 192, PageID.892)

To obtain a *Franks* hearing, White must make "a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit and [ ] the allegedly false statement is necessary to the finding of probable cause."  *United States v. Poulsen*, 655 F.3d 492, 504 (6th Cir. 2011) (alteration in original) (quoting *United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008)).

> A defendant who challenges the veracity of statements made in an affidavit that formed the basis for a warrant has a heavy burden.  His allegations must be more than conclusory.  He must point to specific false statements that he claims were made intentionally or with reckless disregard for the truth.

*United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990). In addition, the defendant "must accompany his allegations with an offer of proof."  *Id.*  "If he meets these requirements, then the question becomes whether, absent the challenged statements, there remains sufficient content in the affidavit to support a finding of probable cause."  *Id.*

"[T]he *Franks* doctrine applies to omissions of information from affidavits as well."  *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998) (citing *United States v. Bonds*, 12 F.3d 540, 568–69 (6th Cir. 1993)); *see United States v. Young*, 847 F.3d 328, 348–49 (6th Cir. 2017).  But the Sixth Circuit has "repeatedly held that there is a higher bar for obtaining a *Franks* hearing on the basis of an allegedly material omission as opposed to an allegedly false affirmative statement."  *United States v. Fowler*, 535 F.3d 408, 415 (6th Cir. 2008).  "Allegations of material omission are held to a higher standard because of the 'potential for endless rounds of *Franks* hearings' due to potentially 'endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to [the] defendant's benefit.'"  *Id.* at 415–16 (quoting

12

*United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990)).  "[E]xcept in the *very* rare case where the defendant makes a strong preliminary showing that the affiant *with an intention to mislead* excluded critical information from the affidavit, and the omission is critical to the finding of probable cause, *Franks* is inapplicable to the omission of disputed facts."  *Mays*, 134 F.3d at 816.

### 1. Images on the Target Website

Through discovery, the government provided White screenshots of the Target Website, none of which showed illicit images.  (D.N. 172, PageID.740 (citing D.N. 186))  White argues that because the screenshots do not show illicit images on the Target Website, Koski "knew, or should have known, there were no illicit images on the [Target Website]."  (*Id.*)  White further asserts that even though Koski had the screenshots, he instead showed the magistrate judge who issued the warrant "highly inflammatory images from the 'other website,'" which "inflamed and prejudiced the Magistrate Judge."  (*Id.*)  In response, the United States asserts that Koski did not have the screenshots at the time he swore out the warrant.  (D.N. 192, PageID.891)  The government also states that it "has not seen any evidence that [the magistrate judge] was 'inflamed and prejudiced' after reviewing the images related to this case."  (*Id.*, PageID.892)

The record does not support White's argument.  In the warrant affidavit, Koski explained that the Target Website was an online chat site where "[c]hild pornography images and videos were trafficked . . . via the posting of web links within chat messages."  (D.N. 23-1, PageID.84–85)  He further explained that the links "allowed a user to navigate to another website, such as a file-hosting website, where images and/or videos were stored."  (*Id.*)  Thus, contrary to White's argument, Koski never asserted that the Target Website itself showed images of child pornography; rather, he explained that the Target Website housed *links* to child pornography.  (*See* D.N. 23-1)

Moreover, the government is correct that White has presented no evidence whatsoever supporting his claim that the magistrate judge was "inflamed and prejudiced" by the images HSI showed her.  (*See* D.N. 172)  And White's claim that the images were taken from the "other website," misrepresents the contents of the affidavit; as discussed above, Koski stated the images were accessible through links housed on the Target Website.  (*See* D.N. 23-1)  Because White has not made a showing of falsity, "he has not cleared the first hurdle toward a *Franks* hearing with respect to this issue."  *United States v. Boone*, No. 3:08-CR-111-CRS-CHL, 2017 U.S. Dist. LEXIS 183424, at *9 (W.D. Ky. Oct. 11, 2017) (citing *United States v. Rose*, 714 F.3d 362, 370 (6th Cir. 2013)).

### 2.   Log-in Credentials

White next argues that Koski "failed to advise [the magistrate judge] of exculpatory investigative information that White never created a nickname, password, or Captcha necessary to passing through" the Target Website's registration page.  (D.N. 172, PageID.741)  As the government observes, however, there is no evidence in the record that White "did not do those things or that the government knew he did not do those things and omitted it from the search warrant," so "White's claim is conclusory and without any supporting facts."  (D.N. 192, PageID.890)  In the absence of proof, White's argument fails.  *See Bennett*, 905 F.2d at 934 (explaining that a defendant requesting a *Franks* hearing must support his allegations with "an offer of proof"); *Franks*, 438 U.S. at 171 ("Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.").  But even if White had proffered evidence of the alleged omissions, his request for a *Franks* hearing would still be

insufficient, since he has not demonstrated that Koski omitted the information because of an intent to misrepresent the facts or mislead the Court.[3]  See *Mays*, 134 F.3d at 816.

### 3.    Duration of Contact with the Target Website

White also contends that the warrant affidavit "omits material exculpatory facts that White's alleged contact with [the] Target Website was of zero duration."  (D.N. 172, PageID.734 (emphasis removed))  "The government disputes this 'fact' as another baseless conclusory statement" (D.N. 192, PageID.891), which it is.  Again, White offers no evidence substantiating his conclusory assertion, rendering it "insufficient to overcome the presumptive validity of a search warrant affidavit to trigger a *Franks* hearing."  *United States v. Shaffer*, 238 F. Supp. 3d 913, 920 (E.D. Ky. 2017), *aff'd*, 781 F. App'x 404 (6th Cir. 2019) (citing *Franks*, 438 U.S. at 171–72).

### 4.    Inference of Access or Possession

Lastly, White argues that Koski knew or should have known that "no duration [on the Target Website] infers no access or possession [of child pornography]."  (D.N. 172, PageID.734)  White's final argument also fails because it is based on his unsupported and disputed assertion that he spent no time on the Target Website.  In sum, White has not made a "strong preliminary showing" that Koski "intended to mislead and exclude critical information from the affidavit."  *United States v. Young*, 847 F.3d at 349.  Under these circumstances, no *Franks* hearing is required. *See id.*

---

[3] White also argues that the affidavit contained another material omission: "that [the Target Website's] software (Le-Chat.php) had an 'Entry Wait' system employed at the time, which prevented a user . . . from passing through the registration page and accessing the secure area of the Chatsite."  (D.N. 172, PageID.741 n.4)  White offers no proof in support of this argument either, however.

C.    **Motion to Suppress the Fruits of the FLA's Search**

In his final motion to suppress, White seeks suppression of "all evidence and illegal fruits obtained pursuant to the 2021 Search Warrant issued in this case, as the search warrant affidavit and search warrant were fruits of the poisonous tree of a wrongful warrantless search that occurred in Brazil."[4]  (D.N. 178, PageID.770)  According to White, "[i]n 2019 the United States, Brazil, the United Kingdom's [National Crime Agency], and likely other countries, had a joint operation in Brazil in which they used some unidentified and presumably illegal search method to de-anonymize IP addresses of Tor users who allegedly were attempting to access [child pornography] websites."[5]  (*Id.*, PageID.770)  In response, the United States contends that there was no joint venture between the United States and an FLA.  (D.N. 190, PageID.867)  The government further contends that the FLA's search was reliable, but even if it was not, that the good-faith exception applies.  (*Id.*, PageID.869–72)

The Fourth Amendment does not "extend to foreign government actions in foreign territories, even when directed against a United States citizen."  *United States v. Serhan*, No. 14-20685, 2015 WL 3578744, at *2 (E.D. Mich. June 5, 2015) (citing *United States v. Janis*, 428 U.S. 433, 455 n.31 (1976) ("It is well established of course, that the exclusionary rule, as a deterrent sanction, is not applicable where a private party or a foreign government commits the offending act.")); *see also United States v. Lee*, 723 F.3d 134, 140 (2d Cir. 2013) ("[S]uppression is generally not required when the evidence at issue is obtained by foreign law enforcement officials."); *United States v. Mount*, 757 F.2d 1315, 1317–18 (D.C. Cir. 1985) ("[T]he exclusionary rule does not normally apply to foreign searches conducted by foreign officials." (collecting cases)).  But there

---

[4] White requests a hearing "[i]n the alternative."  (D.N. 178, PageID.788)
[5] White challenged the FLA's search on similar grounds in a prior motion to suppress, which the Court denied.  (D.N. 23, PageID.71; *see* D.N. 35)

are two exceptions to this rule. *Serhan*, 2015 WL 3578744, at \*2. First, evidence may be suppressed where the foreign government's actions are "so extreme" that they "shock the judicial conscience." *United States v. Maturo*, 982 F.2d 57, 60 (2d Cir. 1992). And second, where the United States cooperates with foreign law enforcement officials "to evade constitutional restrictions" or when foreign officials act as "agents" of the United States, a court may suppress evidence obtained by the foreign officials. *Id.* at 61.

White contends that both exceptions apply to this case. (D.N. 178) As to the first exception, he argues that "the conduct of the US Government, and partnering FLAs, is 'shocking to the conscience' in many ways." (*Id.*, PageID.773) According to White, "the UK's NCA used TEI warrants instead of TI warrants as authority for their traffic analysis," which "was an invalid use of a TEI warrant according to the UK's law" and "the method utilized (either a NIT or traffic analysis) could only be unlawful and/or vastly unreliable, which also shocks the consc[ience]."[6] (*Id.*, PageID.773 (footnote omitted)) And regarding the second exception, White asserts that the United States was part of a joint operation with Brazil, the United Kingdom, "and likely other countries." (D.N. 178, PageID.770)

White's arguments rest entirely on speculation as to the FLA(s) involved and the methods used. *See United States v. Kiejzo*, No. CR 4:20-40036-TSH, 2022 WL 1078214, at \*4–6 (D. Mass. Apr. 11, 2022), *reconsideration denied*, No. CR 4:20-40036-TSH, 2023 WL 2601577 (D. Mass. Mar. 21, 2023) (rejecting nearly identical arguments as speculative). His conclusions are no more than presumptions based on information that he gathered from other cases and the news. (*See* D.N. 178; D.N. 204) White's own statement confirms this: he argues that the United States, in a joint

---

[6] White does not define any of the quoted acronyms. (*See* D.N. 178)

operation with FLAs, "used some *unidentified* and *presumably illegal* search method to de-anonymize IP addresses of Tor users." (D.N. 178, PageID.770 (emphasis added))

Moreover, White's joint-operation theory is contradicted by the record. In the warrant affidavit, Koski averred that the "FLA advised United States law enforcement that it obtained th[e] information [serving as the tip] through [an] independent investigation that was lawfully authorized in [the] FLA's country pursuant to its national laws." (D.N. 23-1, PageID.90) Koski further averred that "United States law enforcement personnel did not participate in the investigative work through which [the] FLA identified the IP address information." (*Id.*, PageID.91) Thus, the Court cannot find that the FLA's investigation requires suppression.

### D.    Motion to Seal

The government moves to seal White's motion seeking to suppress the evidence from the FLA's search (D.N. 187 (referencing D.N. 178)); White's reply in support of his motion to suppress (D.N. 205, PageID.1225 n.1 (referencing D.N. 204)); and White's response to the government's motion to seal. (*Id.* (referencing D.N. 199)) "The reason for" the government's "request is to comply with paragraph 5 of the Protective Order in this case." (D.N. 187, PageID.843) Paragraph 5 states that

> [a]ny discovery material, or information contained therein, that is filed with the Court in connection with pre-trial motions, trial, sentencing, or other matter before this Court, shall be filed under seal and shall remain sealed until otherwise ordered by this Court. This does not entitle either party to seal their filings as a matter of course. The parties are required to comply in all respects to the relevant local and federal rules of criminal procedure pertaining to the sealing of court documents.

(D.N. 56, PageID.207) The government contends that "[t]he documents to be sealed contain information derived from the discovery in this case, which reveal sensitive information about the operation (the FLA, the websites, investigative techniques, etc.)." (D.N. 187, PageID.843) White opposes the government's motion to seal, again insisting that the United States was involved in a

joint operation with FLAs and arguing that the motion to seal is an effort to conceal that fact.[7] (D.N. 199)  White "urg[es] this honorable Court not to participate in the Government's continued cover-up, and instead, allow the truth to be revealed."  (*Id.*, PageID.968)  "In the alternative," White "requests the Court to hold a hearing on this matter."  (*Id.*)

As the government observes, the filings to be sealed contain sensitive information about the investigation that led to White's arrest—information that was derived from the discovery in this case.  (*See* D.N. 205, PageID.1225–26)  White's assertion that sealing is unjustified because the government is attempting to perpetrate a "cover-up" is wholly unfounded.  Because the documents the government seeks to seal include "discovery material, *or information contained therein*," they require sealing pursuant to the terms of the Protective Order.  (D.N. 56, PageID.207) Accordingly, the Court will grant the United States' motion to seal.

---

[7] In his response, White also seemingly attempts to re-argue his motion to compel (*see* D.N. 199, PageID.964–65, 967–68), which the Court denied.  (D.N. 153; D.N. 216)

### III.    CONCLUSION

For the reasons explained above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Defendant Joshua White's motions to suppress (D.N. 171; D.N. 178) are **DENIED**.

(2)     White's motion for a *Franks* hearing (D.N. 172) is **DENIED**.

(3)     White's supplemental motion to suppress (D.N. 173) is **DENIED**.

(4)     The United States' motion to seal (D.N. 187) is **GRANTED.**  The Clerk of Court is **DIRECTED** to seal Docket Nos. 178, 204, 199 and their attachments.

(5)     White's motion to strike a duplicate motion (D.N. 181) is **GRANTED**.  The Clerk of Court is **DIRECTED** to strike Docket No. 177.

(6)     The government's motion to strike and/or substitute a proposed order (D.N. 188) is **GRANTED**.  The Clerk of Court is **DIRECTED** to substitute Docket No. 187-1 with the document at Docket No. 188-1.

July 3, 2024

**David J. Hale, Judge**
**United States District Court**