UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | CR. NO. 3:21-cr-00155 |
| v. | Hon. David J. Hale |
| JOSHUA WHITE, | MJ Hon. Regina S. Edwards |
| Defendant. | |

**DEFENDANT'S SENTENCING MEMORANDUM**

**I. INTRODUCTION**

Joshua White is a 42-year-old biomedical engineer with no criminal history. He is married. He and his wife have no children. They were discussing their plans to have a family when, over three years ago, their lives were interrupted by an investigation by Homeland Security into suspected CSAM activities on a computer in the house.[1]

Mr. White has been on home detention for most of the last three years, monitored with a tether. The extent of his limitations has varied over that period. At first, he was almost totally restricted and not allowed to leave the house. As he proved he could comply with his conditions, he was allowed more freedom; however, all his movement had to be approved by a probation

---

[1] Mr. White aggressively litigated the accuracy of the FLA tip and continues to maintain that there the Government's forensic review of this computer revealed that he was not accessing a child pornography website on April 11, 2019, the date contained in the tip and the date referenced in his first indictment which charged access with intent to view on that date. That count was subsequently dismissed.

1

officer. After his guilty plea to misprision of a felony, his bond was modified from home detention to curfew.

Mr. White was scheduled to begin trial on November 4, 2024. He was charged in a superseding indictment with one count of access with intent to view child pornography and one count of possession of child pornography. Mr. White denied the charges against him and intended to exercise his right to trial. On the eve of trial, it was discovered that the Government's expert had illegally viewed an electronic storage device left at the Homeland Security Investigation office to be erased after being used in a forensic review. This intrusion into the defense camp impaired Mr. White's ability to receive a fair trial.

After the circumstances of this event came to light, the Government and Mr. White negotiated the plea that the Court accepted. Mr. White agreed to plead guilty to one count of misprision of a felony with a Government recommendation for two years of probation.

Mr. White asks the Court to accept this recommendation for two reasons. First, based on Mr. White's background and conduct, a sentence of two years of probation satisfies the principle of parsimony announced in the first sentence of 18 U.S.C. § 3553(a). ("The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection.")

Second, the Court should impose the recommended sentence to uphold the integrity of the plea-bargaining process. Most plea bargaining involves some sort of compromise, but this case involves more compromise than most. Because of the Government's expert's actions, they risked dismissing their case or losing a jury trial. If he was convicted, Mr. White risked a likely prison sentence and the requirement to register as a sex offender. The compromise worked out allows the

Government to secure a felony conviction, which Mr. White does not want but is willing to accept to begin rebuilding his life.

Even if this Court rejects all of Mr. White's sentencing guideline objections, the guidelines still allow the Court to accept the Government's recommendations if it finds "justifiable reasons" for the recommendation. U.S.S.G. § 6B1.2(b)(2).

## II. DEFENDANT'S BACKGROUND

Mr. White has collected a remarkable number of letters (34) that he has submitted to the Court. These letters speak to his character and his generosity to the community.[2] Mr. White has accomplished everything he has in life despite a diagnosis of autism and ADD/ADHD. Because of his high IQ, Mr. White could overcome these neurological issues academically. However, they caused social problems for Mr. White when he was growing up. Mr. White spent a lot of time and energy learning the basics of how to interact with others. Despite all his efforts, he can still be rigid, miss social cues, and think over literally. Combined with his intelligence, by his own admission, this can make Mr. White difficult to deal with. This Court should not conflate this difficulty with deliberate antagonism.

Those who know Mr. White best understand that the good in Mr. White far outweighs any difficulty in his personality. They would not change Mr. White, despite his sometimes hard-to-get-along-with personality.

Mr. White is devoted to giving back to his family and community. The letters from his close family members discuss everything he has done for them. More remarkable are the letters

---

[2] Due to the number and volume of exhibits to Mr. White's memorandum, a printed and bound copy will be shipped to the Court, AUSA, and probation officer.

from members of his community that talk about his work in planting trees around Louisville, his anti-graffiti coalition work, and his mentorship of others.

As noted above, Mr. White has collected a remarkable number of letters. Mr. White understands that many of these letters are similar. However, the letters of Jordan White, Nancy Davis, and Lisa White are particularly personalized and will give the Court insight into Mr. White's character as described by those who know him best.

### III. OBJECTIONS TO THE SENTENCING GUIDELINES

Mr. White has never admitted that he knowingly possessed or deliberately accessed child pornography. He admitted to knowing that child pornography was on his computer and that he deleted these items and did not acknowledge their presence to law enforcement. In order to be used as relevant conduct, the defendant must be aware that the specific images were present on the drive and attempt to hide or remove them.

a. <u>Facts Relied on by the Presentence Report</u>

The presentence report relies on information that is not properly relevant conduct to establish Mr. White's guideline range. The report relies on images found on hard drives that were in storage and had not been used for years before the misprision offense. Because of this temporal break, these images are not relevant conduct to the offense of conviction. Additionally, the images used to support an enhancement for the age of the victim and sadistic conduct were found in unallocated space. Because there is no information regarding how those images in unallocated space got onto the computer, they cannot be used to support an enhancement.

Paragraph 22 of the presentence report relies on images discovered on Hitachi (LI02), WD (LI04), and Maxtor (LI07) hard drives (paragraphs 12-13, 16) to support enhancements for: (1) material involved a prepubescent minor or a minor who had not attained the age of 12 years

4

pursuant to § 2G2.2(b)(2); (2) sadistic or masochistic conduct or sexual abuse or exploitation of an infant or toddler pursuant to § 2G2.2(b)(4); and (3) the number of images pursuant to § 2G2.2(b)(7)(A).

These hard drives had not been used for years before the February 2021 date of the offense alleged in the information. The drives were analyzed to determine their first and last use date.

> LI02 - Event Logs: 2009-2012, Web History: 2009 - 2010, LNK files: 2009-2010, Google Searches: 2009-2010, MFT Created: 11/2/2010
>
> LI04 - Event Logs: 2008-2014, Web History: 2008 - 2013, LNK Files: 2009 - 2013, Google Searches: 2009 - 2013 "C" Folder Created 7/13/2009, MFT Created 2/26/2001
>
> LI07 - Event Logs: 2006 - 2008, Web History: 2001-2008, LNK Files: 2006 - 2009, Google Searches: 2008 - 2010, MFT Created 3/2/2008

The images found on the hard drives were either in the recycle bin or unallocated space. The images in unallocated space had to be forensically recovered or carved from the hard disk and were not accessible without computer forensic software. Almost no information is available about those images.

b. Relevant Conduct

Mr. White pled guilty to a felony information alleging misprision of a felony in February 2021. At that time, only his Toshiba laptop with a Qosmio hard drive (LI20) was in service; that computer had been in service since 2014. No child pornography was on that hard drive. Because there is no identified material relating to his offense of conviction, no specific offense characteristic related to the content of CSAM material should be included in his sentencing guidelines.

Relevant conduct is defined as acts committed or caused by the defendant "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course

of attempting to avoid detection or responsibility for that offense" or acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]" USSG § 1B1.3(a)(1) and (2).

There is no evidence that the Hitachi hard drive (LI02) was used after 2012, no evidence that the WD hard drive (LI04) was used after 2014, or that the Maxtor hard drive (LI07) was used after 2010. From the available evidence, none of these drives were used during at least the seven years preceding the commission of the offense and execution of the search warrant.

This temporal break means that these images are not part of the offense conduct or part of the same course of conduct. See, e.g., *United States v. Teuschler*, 689 F.3d 397 (5th Cir. 2012) (where the defendant sent nine images to an undercover officer in May 2010 and his computer was searched in July 2010, it was error to include the 227 additional images found on his computer as relevant conduct to his conviction of distribution of the nine images in May 2010, citing *United States v. Fowler,* 216 F.3d 459 (5th Cir. 2000)).

The Sixth Circuit addressed the Fifth Circuit's *Fowler* decision in *United States v. Hodge*, 805 F.3d 675 (6th Cir. 2015). There, the court found that the defendant's recording of his stepdaughter exiting the shower was relevant conduct to his receipt of child pornography because his possession was ongoing and occurred during the time he recorded the video.

*Hodge* does not apply to Mr. White's case because his possession of child pornography must be knowing to be included as relevant conduct. USSG § 1B1.3, Application Note 9 and 18 U.S.C. § 2252A. The images were either in unallocated space and inaccessible to someone without sophisticated forensic recovery software or in the recycle bin of computers that had not been used in years. At least twice during evidence reviews, the Government's forensic expert, SA Stuart,

6

stated that it is lucky Mr. White did not know the pictures were there or Mr. White would have erased them. This cannot equate to knowing possession.

Because Mr. White was not in knowing possession of the images on which these enhancements are based during the commission of the misprision, they cannot be relevant conduct for his offense of misprision of a felony.

There is no record of the images involved in the offense to which Mr. White pled guilty, but we know it involved a computer. As such, his offense level should be 18 plus 2 for an offense level of 20. A 9-point adjustment for misprision, a 2-point adjustment for acceptance of responsibility, and an additional 2-point adjustment for first-time offenders result in a final offense level of 7.

    c. <u>Images in Unallocated Space</u>

As noted above, the images found on the hard drives were either in the recycle bin or unallocated space. The images in unallocated space had to be forensically recovered, or carved, from the hard disk and were not accessible without computer forensic software. A computer user could not access these images and had no dominion or control over them.

The images in the computer's recycle bin were from the 2001 "Vanessa" series or a Japanese photography book. Both sets contain nude or partially nude photographs. Neither "Vanessa" nor the female subjects of the book are prepubescent. Neither series includes images of sex or closeups of the girls' genitals. They are similar to boudoir photographs, not "hardcore" pornography. Even if the Court or a jury were to find that they are pornography, none of these images qualify for an enhancement under § 2G2.2(b)(2) for material involving a prepubescent minor or a minor who had not attained the age of 12 or § 2G2.2(b)(4) for sadistic or masochistic conduct or sexual abuse or exploitation of an infant or toddler.

7

The only images the Government alleges qualify for the above two referenced enhancements were recovered from unallocated space and forensically carved by the Government. Almost no information is available about the images in unallocated space. Without more information about where the images in unallocated space came from and how they got on the hard drives, they cannot be used as relevant conduct.

"In the case of solicitation, misprision, or accessory after the fact, the conduct for which the defendant is accountable includes all conduct relevant to determining the offense level for the underlying offense that was known, or reasonably should have been known, by the defendant." USSG § 1B1.3, Application Note 9.

The Sixth Circuit has previously ruled that images in unallocated space should not automatically be included in offense-level calculations without additional evidence that the defendant knowingly possessed or accessed those images. In *United States v. Keefer*, 405 Fed. Appx. 955, unpublished (6th Cir. 2010), the Court held that the mere fact that the images are in unallocated space is insufficient to support an enhancement under the guidelines. "Presence, however, does not inherently require knowing possession or access, as anyone who has received spam email or visited one website only to have another, inadvertently accessed, website pop-up knows all too well. . . . Without more, the enhancement's application was improper." Keefer, 405 Fed. Appx. at 958.

This is particularly true where, as here, Mr. White acquired used computer equipment. Images from the last owner could have remained in unallocated space if they had been deleted without forensically wiping the drive.

The images could have been accidentally accessed while a user was looking for images similar to the ones found in the recycle bin of the computer, nude images of teenage girls, not

8

hardcore pornography of infants and toddlers. They could have been accessed while a user was looking for adult pornography. There is no evidence that anyone deliberately accessed these images or that anyone was aware that they were hiding in the unallocated space of the computer.

There is no evidence that anyone, let alone Mr. White, deliberately accessed images containing prepubescent children under the age of 12 or material that would meet the sadistic or masochistic abuse requirement under § 2G2.2(b)(4).

Without these enhancements, Mr. White's offense level would be 18, plus 2 for the use of the computer and 2 for the number of images. This equates to a total offense level of 22, minus 9 for misprision of a felony, minus 2 for acceptance of responsibility, and minus 2 for being a first-time offender, for a final offense level of 9.

### IV. SALIENT FACTORS UNDER 18 U.S.C § 3553(a)

a. The nature and circumstances of the offense (a)(1).

Mr. White pled guilty to deleting child pornography he discovered on his computer. The Government is seeking to hold him responsible for images found on three very old hard drives stored in his home that had not been accessed in years. While Mr. White disputes that these images should be relevant conduct, even if considered by the Court, these images are far from the worst types of images involved in these sorts of cases. As noted above, there are a few stray hardcore pornographic images in unallocated space, but the majority of the images found were nude images of teenage girls. While troubling, some, all, or many of these images may not even qualify as child pornography under the federal statute.

Any alleged offense involving child pornography is troubling. However, even if the Court presumes the worst, ranked next to other cases, the images alleged to be involved would be among the least offensive.

9

b. <u>The history and characteristics of the defendant (a)(1).</u>

The presentence report provides the basic demographic description of Mr. White. He is a highly educated husband with some significant health issues. However, the report cannot capture his character. Numerous family members, friends, and neighbors have written letters to the Court to try to capture that character.

When a person is charged with an offense related to child pornography, their support system usually crumbles, and while there have been friends who have cut off contact, the number of people who have come forward and been willing to write letters on Mr. White's behalf is remarkable.

Those letters describe someone who is generous and giving, someone with boundless energy and enthusiasm for making the world better, someone who chose a profession that would impact public health, someone who takes a leadership role when he sees an issue in the community, and an Eagle Scout who lives by the Scout motto, "Do a Good Turn Daily."

Jordan White, Mr. White's wife, describes Mr. White's kindness and drive:

> I felt so incredibly lucky to meet someone who looks at the world the way that he does; a dreamer who always carries unwavering hope that things can be better, if we are just willing to try. To be frank, that doesn't mean he is always the easiest to work with, because when he is set on an idea he's steadfast and unwavering. But what it comes down to is this: many desire the world to be a good place, but Josh rolls up his sleeves and does the work, even if no one else shows up.

Notably, she speaks not only about his public volunteering but also about the kindness he shows when no one is watching:

> While I am sure many of the other character letters will rightly speak to Josh's long track record of volunteering, unwavering service to his community, and valiant career choices, I want to speak to some of the quieter moments I've witnessed as his wife… Because I was there when he pulled over in a torrential downpour to help an elderly woman whose car was stuck in a ditch, while others drove by. I've watched him sprint down the street after a neighbor's loose dog, risking his own safety to prevent it from running into Bardstown Road traffic. I've seen him

10

> shoveling snowy sidewalks in the frigid cold for elderly neighbors, and later trimming their trees when the seasons changed. I've witnessed him help a newly-arrived immigrant family find legal guidance when they were unsure where to turn. . . And when I've been in the throes of my own worst times, Josh has been there supporting me the same way he has supported so many others in his orbit for many, many years.

Exhibit A, Letter of Jordan White.

Mr. White's mother-in-law, Nancy Davis, also writes about her personal interactions with Mr. White. Like Jordan White, Nancy Davis acknowledges that Mr. White can be difficult to interact with, "When we first met, I realized Josh was not always aware of social cues." Exhibit B, Letter of Nancy Davis, p. 2. However, while she had known him, she witnessed what a loving and caring person he is, "Please allow me to introduce you to the Josh that I have come to know. He is one of the most compassionate persons I have ever met." Ex. B, p. 1. She is proud of her son-in-law's accomplishments and love for their family. "He always speaks to my 97-year-old Mother when he visits and makes her laugh at his corny jokes. He is always very affectionate to her, giving her hugs and lighting up her day. He loves attending our family Thanksgiving meals and our Christmas holiday get-togethers. Being part of a family is of utmost importance to him." Ex. B, p. 11.

These and the other letters paint a picture very different from the stressed-out defendant who has been litigating this case for over three years. They show Mr. White at his best—what he was before the indictment and what he will be again when this case is over—a gifted person who brings joy to others and works tirelessly for his community.

 c. <u>The need to promote respect for the law and provide just punishment (a)(2)(A).</u>

Along with the need to avoid unwarranted sentencing disparities, just punishment and respect for the law is the factor often cited to support guideline sentences. For sentences based on

the child pornography guidelines, the guidelines do not align with either empirical research into necessary or appropriate sentences, or with public sentiment.[3]

In June of 2021, the United States Sentencing Commission issued a report entitled "Federal Sentencing of Child Pornography Non-Production Report." ("2021 Report"). This 2021 Report updates and expands on a similar report published in 2012 by the Commission. In the 2012 Report, the Commission recognized that "[t]he current sentencing scheme in §2G2.2 places a disproportionate emphasis on outmoded measures of culpability regarding offenders' collections" and that "[a]s a result, the current sentencing scheme results in overly severe guideline ranges for some offenders based on outdated and disproportionate enhancements related to their collecting behavior."

In line with this position, the Commission, in its 2012 Report, recommended Congress take several steps to remedy the problems with the child pornography statutes and guidelines. However, Congress has not acted on The Commission's requests and recommendations:

> To date, Congress has not implemented the Commission's statutory or guideline recommendations. Therefore, §2G2.2 remains largely unchanged, with the guideline enhancements for non-production child pornography offenders at issue in the 2012 Child Pornography Report still in effect. As a result, judges have continued to sentence most non-production child pornography offenders below their guideline ranges, most often by imposing variances pursuant to 18 U.S.C. § 3553(a).

Sentencing Commission 2021 Report, Page 3.

Numerous courts have agreed that the guidelines do not reflect the expertise of the Commission and are not based on careful study and empirical data. *United States v. Henderson*, 649 F.3d 955, 960-63 (9th Cir. 2011); *United States v. Dorvee*, 616 F.3d 174, 184-86 (2d Cir.

---

[3] Mr. White's guidelines are calculated under § 2X4.1. However, those guidelines reference back to § 2G.2.2.

12

2010); *United States v. Stern*, 590 F.Supp.2d 945, 960 (N.D. Ohio 2008) (collecting cases); *United States v. Phinney*, 599 F.Supp.2d 1037 (E.D. Wisc. 2009); *United States v. Beierman*, 599 F.Supp.2d 1087, 1100-04 (N.D. Ohio 2009); and *United States v. Childs*, 978 F. Supp.2d 981 (S. D. Ohio 2013) ("There is widespread agreement among judges, lawyers, and legal scholars that the Guidelines for child pornography offenses are seriously flawed.")

It is not only the Sentencing Commission and courts that believe the guidelines do not accurately reflect culpability. In 2010, the Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, conducted a series of jury polls after guilty pleas to determine if the federal sentencing guidelines accurately reflected community sentiment. Judge James S. Gwin, *Juror Sentiment on Just Punishment: Do the Federal Sentencing Guidelines Reflect Community Values?*, 4 Harv. L. & Pol'y Rev. 173, 185 (Winter 2010).

In the introduction to his article, Judge Gwin discusses his sentencing in *United States v. Shelton*. After the verdict, Judge Gwin pulled the jury to determine what they believed should be an appropriate sentence. Having seen the images but not having heard any mitigation on behalf of the defendant, the sentencing guidelines called for a sentence five times higher than the sentence recommended by the jury.

The Sentencing Commission's report, the judicial criticism, and Judge Gwin's polling all illustrate that a sentence within the sentencing guidelines is unnecessary to provide just punishment or promote respect for the law. In this case Mr. White has been under home detention for over three years. He has been unable to use a computer, which caused him to lose his job, and he has been unable to work as an engineer. An additional two years of probation is adequate punishment for his offense.

    d.   <u>The need to deter criminal conduct (a)(2)(B).</u>

The Department of Justice's own studies show that the certainty of being caught and the perception that criminals will be caught is vastly more important to deter crime than the imposition of a prison sentence. National Institute of Justice, Office of Justice Programs, U.S. Department of Justice, *Five Things About Deterrence*, May 2016.

Mr. White's arrest and case are known in his community. Others who know him and may be considering participating in computer crimes know that the Department of Justice is aggressively investigating and prosecuting cases. This information, not Mr. White's sentence, will deter others from considering criminal activity.

e. Protection of the public from further crimes of the defendant (a)(2)(C).

Mr. White has been under supervision for three years without allegations of further criminal conduct. HSI agents have queried Mr. White's neighbors and friends, and there have been no allegations of misconduct with minors. His letters in support speak to his commitment to his community. A sentence of incarceration is not necessary to protect the public.

f. Providing needed training, medical care, or correctional treatment (a)(2)(D).

Mr. White has a master's degree in engineering. Before his indictment, he was always gainfully employed. He has numerous medical conditions that he treats in the community. When released on bond, he was referred for a mental health evaluation, and no further follow-up was recommended. He does not appear to need these services either in custody or as a condition of probation.

g. The kinds of sentences available (a)(3).

The parties do not agree regarding Mr. White's guideline range and whether that range puts him in a zone that recommends a custodial sentence. Nevertheless, the parties are making a joint recommendation for probation, which is authorized by statute. 18 U.S.C. § 3561(c)(1).

h. <u>The need to avoid unwarranted sentencing disparities (a)(6).</u>

According to paragraph 61 of the presentence report, 26% of defendants with a similar guideline range based on § 2X4.1 received a non-custodial sentence. Based on the unique circumstances of Mr. White's plea agreement, a non-custodial sentence will not result in an unwarranted sentencing disparity.

V. **TERMS OF PROBATION**

The parties are making a joint recommendation of two years of probation, but there is no agreement regarding Mr. White's probation terms. He requests that the Court remove his electronic monitoring and computer use restrictions.

a. <u>Mr. White's tether should be removed.</u>

Mr. White has been on bond for over three years. During this time, there has only been one alleged violation of his bond, which the court never heard. In September 2024, Mr. White was alleged to have had unsupervised contact with two minor males while at Planet Fitness. His wife accompanied him to Planet Fitness. Their Ring doorbell captures the couple leaving the house in workout clothing, and she is signed in at Planet Fitness at the same time he is.

A video of the encounter exists and was reviewed by Mr. White's counsel. Mr. White was working out at Planet Fitness during a relatively busy time. Several times, he speaks with two young men and appears to be giving them workout instructions. While potentially annoying, the interaction is not troubling from a predatory standpoint. Jordan White, Mr. White's wife, was at

the gym that day and was in the cardio area just out of the camera's view, and thus, Mr. White was supervised. See Exhibit II, Declaration of Jordan Beth White.

Mr. White has been under supervision for the last three years. While his pretrial tether restriction is not considered punishment under the guidelines, this Court can and should consider it when determining whether additional tether restrictions are needed. Because of his positive conduct on pretrial supervision, no additional tether restrictions are necessary for punishment, rehabilitation, or public protection.

    b.  <u>Mr. White's Computer Restrictions Should be Removed.</u>

Mr. White has been unable to use a computer without third-party supervision. There is no need to continue this restriction while Mr. White is on probation. Over the last three years, there have been no allegations of Mr. White misusing the computer. As an engineer, he needs to use a computer for his work. This felony conviction will make it harder for Mr. White to find a job; a requirement that a potential employer must consent to have either their computer or Mr. White's computer that he is using to work for that employer monitored will likely be a deal breaker for that employer as it will likely violate most companies' intellectual property protections. Returning to gainful employment is one of Mr. White's primary goals and should be a primary goal of this Court. Given his three years of positive behavior, the marginal benefits of continuing to monitor him for a limited period are outweighed by the negative consequences the monitoring will have on his ability to get employment.

    c.  <u>Monetary Penalty</u>

Under the plea agreement, the Government recommends a fine at the low end of the guideline range, $7,500. Mr. White has been unemployed for three years and is supported by his wife. He has spent a large amount of money on legal fees.[4] Most of the money for legal fees was borrowed from relatives, who need to be paid back. Mr. White requests that he be sentenced to a period of community service in lieu of a fine.

VI.     CONCLUSION

For the above-stated reasons, this Court should accept the parties' joint recommendation and impose a two-year probationary sentence.

Respectfully submitted,

/s/ Wanda McClure Dry
The Dry Law Firm
P.O. Box 2122
Danville, Kentucky 40423
Co-counsel for Defendant

/s/ James R. Gerometta
Law Office of James Gerometta
27 E. Flint St
Suite 2
Lake Orion, MI 48362

CERTIFICATE OF SERVICE

---

[4] Undersigned counsel is the seventh attorney to appear in this case.

I hereby certify that on January 13, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to the Hon. A. Spencer McKiness, Assistant United States Attorney, and Hon Stephanie M. Zimdahl, Assistant United States Attorney.